[Civil No. 3799.   Filed April 26, 1937.]

[67 Pac. (2d) 487.]

EDITH HANER, Administratrix of the Estate of DONALD HANER, Deceased, Appellant, v. WILSON-COFFIN TRADING COMPANY, a Corporation, Appellee.

Messrs. Cox & Moore, for Appellant.

Messrs. Wilson, Wood & Compton, for Appellee.

McALISTER, C. J.—Edith Haner, as adminis-tratrix of the estate of Donald Haner, brought an ac-tion against the Wilson-Coffin Trading Company, a corporation, for the recovery of damages alleged to have been suffered by the estate of Donald Haner as a result of an automobile accident in which he lost his life. The jury returned a verdict in favor of the defendant and the plaintiff appealed from the judg-ment entered thereon and from the denial of her mo-tion for a new trial.

The record discloses that on October 2, 1934, the defendant was running a garage in Flagstaff, Arizona, and was the owner of a large wrecker automobile which Fred Brumley, one of its employees, was driving on highway 66 in an easterly direction and that at the same time Donald Haner, deceased, was driving a Chevrolet coupe on the same highway in a westerly direction. They met near the crest of a hill about one-quarter or one-half mile east of Flagstaff and in attempting to pass each other the two cars collided near the middle of the highway, the result being that the driver of the coupe was so seriously injured he died within a few minutes thereafter.

The testimony, so far as necessary for a proper disposition of the questions of law raised, may be stated as follows: One Dan Hibbert of Mesa, Arizona, while on his way to Utah with several others, broke an axle of his car about twenty miles east of Flagstaff and returned there to secure someone to tow it in to be repaired. He employed the defendant which sent out its wrecker in charge of Fred Brumley, Hibbert accompanying him. They left Flagstaff around 1:30 P. M. The motor of the wrecker was cold and not per-

forming properly, so Brumley stepped on the accel-. erator, choked the motor for some distance and, as he was within seventy-five or a hundred feet of the crest of a hill some two hundred yards in length and having a grade of about four per cent., saw the top of Haner's car about two hundred or two hundred and twenty-five feet away coming from' the east on the north side of the road. Immediately following the release of the choke he looked again at the approaching car which was then about one hundred and fifty feet away and observed that it was turning to the south side of the highway. After reaching that part of the road and following it for some distance it turned back towards the north side. Brumley, according to his testimony, kept on the south side of the road until he was within about thirty-five feet of the Haner car and, thinking it necessary to turn to the left to avoid a collision with the coupe, it being impossible to go to the right due to a large rock and the embankment on the south side of the highway at that point, swerved suddenly to the left, and near the center of the road his car and the coupe collided, the latter having turned to the north the same instant he did. The right front of his car and the left front of the coupe came together with terrific force. The former landed against the north embankment of the highway pointing northwest and the latter, after being turned around, was thrown off the pavement and almost through the wire fence on the south side. Both cars were badly wrecked and plaintiff's decedent was thrown through his left door and fell on the front of the tow car. He died in the hospital a few moments afterwards without regaining consciousness. Brumley, according to his testimony, was driving thirty-five miles an hour but applied his brakes after Haner, who was coming at a speed of sixty to sixty-five miles, had gone some distance on the south side of the pavement which was

eighteen feet wide, there being a shoulder three or four feet wide on either side.

Dan Hibbert, the only other eye-witness to the accident, testified that when Brumley pulled the choke with his right hand to adjust the carburetor his left hand swayed the car to the north or center of the road and that it continued to run there, except it may have been pulled a little to the left, until he turned it suddenly to the north just a few feet before it reached the point of collision. According to Hibbert, Brumley released the choke about seventy-five feet from the top of the hill and one hundred and twenty-five or fifty feet from the approaching Haner car and just as it was turning to its left or the south side of the road, but he still kept his course in the center because, perhaps he did not know which side the coupe was going to take. He stated further that the cars were running about the same rate of speed, around forty miles an hour, and that they collided a short distance north of the center of the highway.

There were several other witnesses and their testimony in the main tended to strengthen that given by Brumley, but in view of the statements of the two eye-witnesses, Hibbert and Brumley, and the legal propositions raised in the appeal, a proper disposition of the matter does not require a statement of what they said.

The only assignments arise out of the instructions, two that were given and two requested by the plaintiff and refused. One of those objected to reads as follows:

"You are instructed that if you find that Donald Haner was driving his car on the left or south side of the highway prior to the collision Fred Brumley had the right to assume that Donald Haner would go to the right or north side of the highway in sufficient time to enable Fred Brumley to pass him on his right or south side of the highway."

The objection urged by appellant to this instruction is that it assumes that Donald Haner was negligent in driving on the south side of the highway when there was evidence from which the jury could have found that his doing this was caused by Brumley's negligence in driving too far north on the highway. If it be true, she argues, that Haner did turn to the south side of the road and drive there for some distance because of Brumley's action in driving too far to the north and he was justified in doing so, then Brumley would not have the right to assume that Haner would turn to his right or the north side of the road in time for him (Brumley) to pass Haner on the south side of the highway. In other words, by his own primary negligence in going over too far to the north or the wrong side of the road he forfeited his right to rely on this assumption, because a motorist may have the benefit of this rule only when his conduct measures up to that of a prudent, careful person in like circumstances. In support of this position she cites *Steele* v. *Fuller,* 104 Vt. 303, 158 Atl. 666; *Cushing Refining & Gasoline Co.* v. *Deshan,* 149 Okl. 225, 300 Pac. 312.

■■ There can be no question but that the instruction would have been a correct statement of the law and applicable to the facts if all the testimony had shown that Brumley was on the south or his right side of the road up to the instant he made the sudden turn to the north to avoid a head-on collision. Appellant admits this but contends that in view of the testimony of Hibbert that Brumley was driving in the center of the road when the coupe came in sight about a hundred and fifty feet away and continued to run there until he suddenly turned to his left a few feet from the point of collision, it is not correct. She takes the position that Brumley's action in that respect justified her decedent in thinking that his safest way to pass the tow car was to turn to his left or the south

side of the road. It is perhaps going too far to say as a matter of law that Brumley's driving in the center of a road having only an eighteen-foot pavement, or, at least, his failure to turn to the right the instant the coupe came into view from the other side of the hill, had this effect, but it did create a situation which made it necessary for Haner to decide which way he should turn to pass, and when he determined that his safest course lay in turning to the left and did so, it became a matter for the jury to decide whether under the circumstances his action was that of a reasonable person. While it is the first and primary duty of the driver of an automobile to keep on the right side of the road, yet he may be excused for departing from this rule when in the exercise of the judgment of a reasonable person an accident can be avoided in no other way. Because of the importance of this rule in the use of the road and the great danger with which the failure to obey it is fraught, every driver of an automobile is held to a strict observance of it, except where the road is clear and it is necessary to pass some obstruction or a car going in the same direction, or its violation is necessary to prevent an accident.

Inasmuch, therefore, as Haner's act in turning to the left was such that it would have justified a jury in finding that it was caused by Brumley's driving in the center of the road, it would seem to be clear that Brumley was not entitled to rely on the assumption that Haner would turn to the north side in time for him to pass on the south. He could not by his own negligent act create a situation that led Haner to believe that his own safety lay in his turning to the left or wrong side of the road and then relieve himself of the consequences of that act by saying that he had a right, in spite of the position he had taken in the center of the road and was still maintaining, to assume that Haner would return to the north side in time for him

to pass on the south. While driving in the center and where, in view of the fact that he was ascending a hill and could not see who was coming from the other side until he approached the crest, he should not have been, at least, after the coupe came into view, Brumley's right to assume that Haner would turn to the north side was different from that that he would have had if he had been on the right or south side of the road, yet the instruction makes no distinction in the two situations but, in effect, tells the jury that he was just as much entitled to rely on the assumption in the one instance as in the other. In other words, it advised that body that he could by his own negligence lead Haner to turn to the wrong side of the road in the interest of his own safety and by so doing incur no different or greater responsibility than he would if Haner had made the same move while he (Brumley) was on the right side of the road and guilty of no negligence at all. It is clear that the instruction was erroneous.

██ The contention of the appellee that it is abstract, without application to the facts and, hence, immaterial because Brumley did not do what it told the jury he had a right to do, that is, rely on the assumption, but instead turned to the north, is without merit. Though driving in the center of the road where he should not have been, at least, after the coupe came into view over the hill, the instruction authorized the jury to believe that Brumley still had the right to assume that Haner would turn to the north in time for him to pass on the south, and this, notwithstanding the fact that he was entitled to the benefit of this assumption only if he was in his proper place, the south side of the road.

██ Appellees suggest further that the instruction, if incorrect, was prejudicial to appellee but not to appellant, because the jury could reasonably have in-

ferred from the statement that Brumley had the right to assume that Haner would proceed on his own side of the highway, that he should not have swerved to the north and that in doing so he acted wrongfully. This is likewise without merit, since it was plainly the duty of Brumley, even though driving in the center of the road where he should not have been, to do what he could to avoid an accident, and if in that position the way to accomplish this when the cars were only thirty-five feet apart was to swerve suddenly to the north, it was his duty to do so, it being then in his mind too late for Haner to turn to the north side. His duty under the circumstances to avoid a collision was certainly no less than it would have been if he had been on the south side of the road when he turned sharply to the north, hence there is no question but that in the situation confronting him he was justified in swerving to the north if that was the only way to accomplish this purpose. The fact that the driver of the coupe decided to turn in that direction at the same time did not affect his duty.

■■ The other instruction of which complaint is made reads as follows:

"If you find that immediately prior to the collision said Donald Haner was negligently driving his automobile on the south side of the highway and south of the center line thereof, and that such fact caused or contributed to said collision as a proximate cause, then your verdict should be for the defendant."

The objection is that though the evidence was such that it justified a finding that Haner's driving on the south or wrong side of the highway was caused by the primary negligence of Brumley, this instruction tells the jury that if it finds that he was driving on that side (a fact admitted by all parties) and it was practicable for him to drive on the north side, his driving there was negligence and appellant cannot recover,

but it fails to state that his doing so did not constitute negligence if caused by the negligence of Brumley. If, she contends, Haner's conduct constituted negligence, it could have been negligence only as to Brumley, the driver of the other car, to whom he owed the duty at that particular moment of observing proper care in the handling of his car, and if his driving on the wrong side was brought about by the negligence of Brumley, it did not as to him constitute contributory negligence. While the instruction would have been more complete if the suggestion of appellant had been made a part of it, it is nevertheless a correct statement of the law without it, because it authorized the jury to find that Haner's driving on the south side contributed to the collision only if it found that he was negligently driving there. This necessarily implied that if it found that he was not driving there negligently, his doing so did not contribute to the accident. Appellant could have requested that the instruction be amplified in such a way as to advise the jury specifically of this as well as of the further fact that by driving on the south side of the highway Haner was not guilty of contributory negligence if he was led to do so through the primary negligence of Brumley, but she did not do this. The objection is not tenable.

The third and fourth assignments are based on the refusal to give two instructions requested by appellant. They were both argued under one proposition of law which in effect is this: When the plaintiff in a suit for damages resulting from a collision of two automobiles going in opposite directions on a public highway shows that the collision occurred on his right side of the road, the burden of proof is on the defendant to show that he was not negligent in permitting his car to get on that side of the highway. If it be conceded that there was evidence from which the jury could have found that the collision did occur

north of the center of the highway, the court did not err in refusing to give these instructions. The mere fact that the car driven by Brumley was on the wrong side of the road at the time of the accident did not of itself render appellee *prima facie* liable and shift the burden of proof, because the statute itself, section 1592, Revised Code of 1928, permits driving on the left side of the road when overtaking and passing another vehicle and when it is impracticable to drive on the right side, and, besides, it is sometimes necessary to use the wrong side to avoid an accident. Hence, before it may be held that his driving on that side establishes a *prima facie* case and shifts the burden of proof, it must appear further that his doing so was a proximate cause of the accident; in other words, there must be some causal connection between his driving on the wrong side of the road and the accident. In *Consolidated Coach Corp.* v. *Bryant,* 260 Ky. 452, 86 S. W. (2d) 88, 90, the court used the following language in discussing this question:

"The law of the road required the driver of the Consolidated Coach Corporation's bus, if it was its bus, to keep to the right of the center of the highway, yet the mere driving or the presence of the bus on the wrong side of the highway is alone insufficient to sustain a verdict unless it is further shown that it was the proximate cause of the accident."

Even if Brumley's act were negligence *per se* it would not be actionable unless it was a proximate cause of the accident resulting in the injury. *Salt River Valley W. U. Assn.* v. *Compton,* 39 Ariz. 491, 8 Pac. (2d) 249; *Schell* v. *Du Bois,* 94 Ohio St. 93, 113 N. E. 664, L. R. A. 1917A 710.

The main case relied on by appellant in support of his contention is that of *Ward* v. *Meredith,* 220 Ill. 66, 77 N. E. 118, and a reading of it discloses that the instruction that a *prima facie* case is deemed to have

been made when it is shown that the person sought to be held liable was running his car at the time of the injury on the left side of the highway, was based on a statute, and Arizona has no provision of this character.

The judgment is reversed and the case remanded for a new trial.

ROSS and LOCKWOOD, JJ., concur.