ALBORN, Appellant, v. ARMS et al., Respondents

(52 N. W.2d 101)

(File No. 9236. Opinion filed February 18, 1952)

**Bailey, Voorhees, Woods & Fuller and F. M. Smith,** all of Sioux Falls, for Plaintiff and Appellant.

**Carl W. Miller,** Flandreau, for Leslie Arms, Guardian Ad Litem for Darrel Arms, Leslie Arms, Defendants and Respondents.

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Edward Cox and William Cox as Cox & Sons, contractors, a co-partnership, Defendants and Respondents.

LEEDOM, J. Plaintiff, the appellant here, brought this action as special administrator of the estate of his infant son to recover damagse arising from the death of the child in an automobile and truck collision. The action was brought against defendants represented by different counsel. Two of the defendants are a father and his 19 year old son, Leslies and Darrel Arms, owner and driver respectively of the truck involved. The other defendants are a father and son, Edward and William Cox, copartners in the business of graveling roads for whom the defendants first mentioned were hauling gravel. For convenience and clarity the defendants first mentioned, that is the truck owner and driver, will be referred to as Armses and the son who drove the truck as Darrel; and the other defendants, the gravel contractors, as Coxes.

The Armses were engaged in hauling gravel under an oral agreement with the Coxes in the performance of a contract, also oral, that the Coxes had with a township board to gravel a township road. The accident occurred at an intersection of U. S. Highway 14 running east and west, east of Brookings, South Dakota and a graveled county road referred to as the Flandreau road running north and south north of Flandreau, South Dakota. Darrel drove his truck loaded with gravel north toward this intersection. Plaintiff drove his Plymouth automobile in which his family were passengers west on highway 14 toward the intersection. A stop sign is placed near the southeast corner of the intersection east of the Flandreau road to warn drivers on that road to stop before entering the intersection. The vehicles collided in the intersection and plaintiff's son about 3 months old was killed.

The circuit court directed the jury to return a verdict for Coxes, the gravel contractors, on a motion made at the end of the case on the grounds that there was no evidence of their liability under the doctrine of respondent superior and that the evidence conclusively established that the Armses were independent contractors.

The defendants Arms had moved for a directed verdict at the end of plaintiff's case and again after all parties had rested on the ground, among others, that plaintiff's own negligence contributed to and was the proximate cause of the accident. The court denied these motions. The jury returned a verdict for plaintiff of $6,250 against the Armses. Their motion for judgment notwithstanding the verdict based on all the grounds urged in the previous motions, and the whole record, was granted.

The appeal presents two questions only: (1) Does the evidence establish as a matter of law that the Armses were independent contractors? and, (2) Does the evidence establish as a matter of law that plaintiff's conduct at the time of the accident constituted contributory negligence? We answer the first affirmatively and the second in the negative. It is our opinion that the circuit court properly directed a verdict for the defendants Cox and erred in granting the motion of the defendants Arms for judgment n. o. v.

■ We consider the question involving the respondents Arms first. For our purpose the jury verdict establishes Darrel Arm's negligence. All we consider is the contributory negligence of appellant; and in such consideration we are bound to view the evidence in the aspects most favorable to appellant.

Appellant proceeded west on U. S. Highway 14 at midday about 55 or 60 miles per hour returning with his family to their home in Brookings after a visit with relatives in Minnesota. The highway was of bituminous surface and dry. The day was overcast. Appellant was familiar in a general way with the highway, having made several such trips, knew it was a through route and that there were intersecting secondary roads equipped with signs to stop traffic before entering the arterial highway on which he traveled. On cross-examination appellant testified thus:

"Q. As you approached the intersection where the accident occurred, did you look to the south for approaching vehilces? A. No.

"Q. Did you look to the north for approaching vehicles? A. No.

"Q. Did you see any vehicles approaching from either the north or south? A. No.

On redirect he testified:

"Q. Now as you were driving down that highway, west on Highway 14, on October 3, 1949, and as you approached this particular intersection, where were you looking? A. Down the road and taking in what my regular cone of vision was.

"Q. Now as you looked down this highway, did you have a certain amount of vision to the right and to the left? A. Yes. * * *

"Q. Now I will ask you Melvin, as you came out of that swale [⅛ to ¼ mile from the intersection] going west, did the vision that you had to the left, was it sufficiently wide so you could see the stop sign placed to the left of the oil on the Flandreau Road? A. Yes.

"Q. And do you recall seeing that stop sign? A. I do.

"Q. Now I will ask you, Melvin, was there any vehicle in sight in or around that stop sign at that time? A. No."

Appellant continued to maintain a continuous lookout ahead and did not see the truck coming into the intersection until he was within 50 to 75 feet from the intersection. His contributory negligence, if it exists as a matter of law, must be based on the conduct revealed by the foregoing testimony. What appellant did or failed to do to avoid the collision in the emergency after seeing the truck at close proximity quite clearly had no relation to proximate cause as the accident then as a practical matter was inevitable. The split second timing involved did not permit of the execution of such good intention as may have been formed by either driver.

The evidence shows that traffic converging on either of the two roads toward the intersection was partially obscured to motorists on the other road by the swale referred to in

highway 14, by a fully grown cornfield south of highway 14 and east of the Flandreau road, and by an elevation of ground in the cornfield; and that northbound traffic on the Flandreau road was substantially hidden for a short distance by a grove of trees along the east side of the road about a quarter of a mile south of the intersection.

The jury may reasonably have found from the evidence that Darrel wholly failed to stop his truck at the intersection; or if the jury chose to believe Darrel's testimony that he stopped before entering the intersection the point of stopping could have been from 10 to 50 feet or even a greater distance south of the stop sign which would place the vehicle while stopped 60 to 90 feet or more south of the tarred surface of highway 14. Different witnesses gave varying versions of the degree of obscurity of converging traffic on, and viewed from this point and other points down to the grove on Flandreau road, all in relation to various points on highway 14 from the intersection to the swale.

Except for such failure of duty as may be found in the quoted testimony there is no evidence of any degree of carelessness of negligent operation of his car on the part of appellant prior to the time he first saw the truck.

■ It is contended by respondents Arms and it was apparently the position of the trial court that the evidence clearly establishes the fact that appellant did not "look" as he approached the intersection and that he therefore, as a matter of law, was guilty of contributory negligence. We hold such view unjustifiable under the evidence. Reasonable men certainly could infer from the quoted testimony, and in fact the conclusion seems inescapable, that appellant maintained a lookout to a greater or lesser degree, and therefore did "look" as he approached the intersection. Appellant's admission that he did not "look to the south" is not inconsistent with his statement that the area of the intersection was within the breadth of his view. Whether or not appellant's lookout meets the standard set for the reasonably prudent man was a question for the jury and not the judge to decide for the reason that different inferences as to the adequacy of the lookout maintained by appellant can be reasonably drawn from attendant circumstances. Con-

ditions existing such as appellant's knowledge that he had a preferred right in the intersection, his knowledge that no traffic was in sight at the area of the intersection as he emerged from the swale nor to the indefinite time that the stop sign passed from his view, his right to assume that any vehicle later approaching the intersection from the side road would stop, and the difficulty of obtaining a clear view of the vehicle approaching from the south, should in our opinion be weighed by a jury against such inferences of lack of care as may be drawn from appellant's testimony that he did not "look to the south", in reaching a judicial determination as to whether or not appellant acted prudently.

■■ The foregoing conclusion we believe to be fully supported by rules recognized in prior decisions of this court. It is well settled that appellant had a right to assume that any vehicle approaching the intersection after he saw the area clear, would stop and let him through. Robertson v. Hennrich, 72 S. D. 37, 29 N.W.2d 329, 331, and the cases there cited. Also significant as to the degree of care required of appellant is this language quoted by this court with approval in Litz v. Arbeiter, 57 S. D. 481, 485, 233 N.W. 914, 916, cited in the Robertson case: "But the fact that one is entitled to the right of way at the intersection is a very material element in determining whether he has exercised the required degree of vigilance. Manifestly, the driver of a machine cannot look in both directions at the same time, and a question for the jury is usually presented as to the negligence of the respective parties. He may be required to keep a look-out for cars approaching from his left; and, if he fails in this respect, he may be charged with negligence. It is a question for the jury whether he is negligent in failing to look toward the left."

Respondents rely on Jamieson v. Gerth, 61 S. D. 514, 249 N. W. 921, among other cases. In that case however the vehicle of the defendant had the right of way in the first instance, and ultimately unless it was forfeited by excessive speed which question was left undecided; and plaintiff after having seen defendant approaching a city street intersection and being charged with knowledge that the oncoming driver

at least had a claim to the right of way wholly ignored a situation that obviously presented a potential hazard. Other cases cited by these respondents are clearly distinguished on the basis either that the defendant had the right of way or that vision at the intersection was wholly unobstructed leading to the inevitable conclusion that plaintiff wholly failed to maintain any lookout. What we have previously said concerning the lookout maintained by this appellant disposes of those decisions involving contributory negligence as a matter of law where the driver "did not look".

It follows that judgment should have been entered against these respondents on the verdict returned by the jury.

The question that determines the liability of the respondents Cox is one that has been before this court and courts of other jurisdictions a great many times. We share the view expressed by other courts' that the question is difficult and the solution not entirely satisfactory. There is certainly no clear line of demarcation in many of the cases between the status of a servant or employee on the one hand and an independent contractor on the other. With considerable uniformity courts have established numerous tests to be used in resolving the question. The first difficulty is in applying such tests to given ultimate facts; and more serious trouble is encountered in deciding, as we must do in this case, whether or not given evidence clearly establishes ultimate facts to which the tests are to be applied, or presents enough uncertainty as to require a jury determination as to what the ultimate facts really are. The nature of the tests have been discussed to such extent in previous decisions of this court that there is no purpose in supplementing the discussion here. Certainly counsel in this case are thoroughly familiar with the subject. Furthermore the precise question confronting us in the case at bar has to do with that more difficult phase of the matter mentioned above, that is whether the evidence presents without substantial variation all the ultimate facts, obviating jury determination.

Counsel for appellant urge that there is a dispute in the evidence on at least two of the important factors that go

into a determination of the relationship existing between respondents Arms and Cox. These factors are control over Darrel in the performance of his work and the right to terminate the relationship, and counsel set out in their reply brief the testimony on which they rely to establish such dispute in the evidence. It must be ·conceded that certain isolated bits of evidence, all brought out on cross-examination, would tend to show control over Darrel and the right to terminate the relationship to be in respondents Cox. Such evidence however, weighed against all the evidence that bears directly and indirectly on the relationship, is not sufficient in our opinion to defeat a clear inference that the respondents Arms were independent contractors.

No South Dakota case has been called to our attention that involves a fact situation closely analogous to the instant case and our research has revealed none. In the recent case of Carlson v. Costello, S. D. 48 N.W.2d 825, 826, in dealing with the question as to when evidence involves a jury determination, we quoted with approval from Restatement, Agency § 220, p. 484 ,as follows: "The factors stated in Subsection (2) are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relationship. Where the inference is clear that there is or it not, a master and servant relationship, it is made by the court; otherwise the jury determines the· question after instruction by the court as to the matters of fact to be considered."

We are satisfied from all the evidence "the inference is clear" that the relationship between the respondent Arms and Cox was not that of master and servant; and that under the foregoing rule the determination of the status should be made by the court and not the jury. Other jurisdictions, either in cases involving very similar fact situations or by adherence to announced principles that we deem controlling, support the conclusion we have here reached. See Burns v. Eno, 213 Iowa 881, 240 N.W. 209; Lind v. Eddy, 232 Iowa 1328, 6 N.W.2d 427, 146 A.L.R. 695; Cocke & Branden v. Ayer, 129 Tex. 660, 106 S.W.2d 1043; Western

Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 P. 721; Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922.

Admittedly the record reveals facts either wholly undisputed or about which there can be little real question that clearly support the independent contractor status of the respondents Arms. Among such facts are these: hauling gravel was a distinct business or "independent calling" of respondents Arms; they furnished the truck involved; compensation was on a yard-mile basis; liability insurance was not carried by Coxes on the Arms' truck and it was carried on Coxes' own equipment; no deduction was made for withholding taxes from the Armses' compensation; and the Armses were not carried on the Cox payroll for workmen's compensation insurance. In addition to the foregoing factors, all incompatible with the master and servant relationship, it is our view as previously indicated, that there is no real dispute in the evidence on the test or factor of control.

The judgment is affirmed as to the respondents Edward and William Cox and reversed as to the respondents Leslie and Darrel Arms; and the case is remanded to the circuit court with instructions to vacate the judgment from which the appeal is taken insofar as it relates to said respondents Arms and to enter judgment against them and in favor of the plaintiff on the verdict returned by the jury.

SICKEL, P. J., and ROBERTS and RUDOLPH, JJ., concur.

SMITH, J., concurs in the result.