**269 P.2d 1059**

**HENDERSON et ux. v. BREESMAN.**

**No. 5830.**

Supreme Court of Arizona.

May 10, 1954.

Rehearing Denied June 22, 1954.

Conner & Jones, Tucson, Fennemore, Craig, Allen & Bledsoe, Phoenix, for appellants.

Stevenson & Goldberg, Tucson, for appellee.

WINDES, Justice.

The problems presented herein resulted from litigation between Charles E. Breesman, as plaintiff, and Edward Whitehead, Jane Doe Whitehead, his wife, George Henderson and Helen Henderson, his wife, as defendants, arising out of an automobile accident which occurred in the nighttime at the intersection of Warren Avenue and Spring Street in Tucson, Arizona. From a verdict and judgment in favor of plaintiff in the sum of $18,284, defendants Henderson appeal and submit ten assignments of error. These will be disposed of, not necessarily in the order presented, but in such manner as to decide the essential legal questions. The parties will be referred to as plaintiff and defendants.

Warren Avenue runs north and south and Spring Street east and west. The plaintiff was driving north on Warren Avenue and the defendant Edward Whitehead, driving the automobile of defendants Henderson in the course of his employment as their agent, was traveling east on Spring Street.

The court's instruction on the measure of damages in the event the jury found for the plaintiff included as elements thereof such medical expenses as the jury believed the plaintiff would probably have to spend in the future, if any, and also the element of the permanent impairment of his earning capacity as the jury might feel

the plaintiff had probably sustained, if any. The defendants contend the jury should not have been allowed to consider these elements for the reason that there was no evidence to support the same.

The plaintiff suffered severe injuries including a fracture of the left arm, cerebral concussion and was unconscious or in a semi-comatose condition for approximately a week. There is evidence he still has an eye injury and suffers from headaches. A doctor testified to the possible permanency of the injury. We have held that even without medical testimony, the nature of the injuries alone might warrant an instruction allowing the jury to consider the injuries permanent. City of Phoenix v. Mullen, 65 Ariz. 83, 174 P. 2d 422. Without a detailed description of his injuries, we think all the evidence would warrant a finding of some permanent injury. We are unable, however, to find any evidence that would authorize the jury to consider future medical expenses or permanent impairment of earning capacity. The mere fact alone that there may be some permanency to the injury is not enough. This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item. Consolidated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132; 25 C.J.S., Damages, § 162b(5), page 829. Of course, at best it is a mere estimate and cannot be determined with accuracy, but there must be some evidence to authorize the estimate. The jury cannot be left to guess the probable nature of future treatment or the probable expense thereof.

The same situation exists as to the permanent impairment of earning capacity. At the time of the trial and for sometime prior thereto, the plaintiff had been engaged in the same work (bus driver) with as much income as prior to the accident. There is nothing in the evidence indicating the probability that this situation will change in the future. It is our view, therefore, that the jury should not have been allowed to consider future medical expense nor future decreased earning capacity in assessing plaintiff's damages.

Over defendants' objection and at the request of the plaintiff, the court gave the following instruction:

"I charge you that at the time of the accident in this case and immediately prior thereto while Edward Whitehead was proceeding along Spring Street, it was his duty to drive his vehicle on the right half or right side of the road. And, if, at the time of the accident, the car which he was driving, or any part of that car, was not on the right half of Spring Street, then he was driving in violation of the laws of this State."

The rule is that instructions should state the law as applicable to the facts which the jury is warranted in finding from the evidence. It will be observed that the instruction tells the jury in effect that if any part of defendants' car was at the time of the accident on the left side of the road, the driver thereof, irrespective of what caused his position, was guilty of violating the law. Under some circumstances one may legally be on his left half of the highway. The correctness of this instruction, therefore, must be tested by what are the possible facts, depending on how the jury weighs the evidence. If the defendants' car or any part thereof was over the center line at the time of the accident, and there were no possible facts that would legally excuse this position, the instruction was correct. On the other hand, if the jury may find facts which would legally justify his presence across the center line, we think the instruction was erroneous. There was evidence that the defendant driver approached the intersection on the wrong side. There was also evidence that he approached and entered the intersection on his right half of the road. There was evidence that he swerved his car to his left in an attempt to avoid the accident. There was evidence that the impact was north of the center line of Spring Street, one witness locating it a distance of about three feet. We know not how the jury viewed the evidence but we are of the view that it could have found that the driver of defendants' car approached the intersection on his right half of the road and that the necessity of an emergency placed him across the center at the time of the impact. If such be the facts, he is excused and would not be in violation of the law. Haner v. Wilson-Coffin Trading Co., 49 Ariz. 402, 67 P.2d 487. Our view is that this instruction does not correctly state the applicable law to all the possible facts and is therefore erroneous.

█ The plaintiff contends that because the court gave defendants an opportunity to submit a separate instruction covering this factor and they failed to do so, they cannot complain. This is not a case of amplifying an instruction which is correct. It is difficult to see how a separate instruction covering this fact situation could be given without a conflict between the two.

Defendants requested the following instructions which the court rejected:

"13. You are instructed that independently of any statute, it is the duty of every automobile operator to keep a careful lookout ahead at all times and at intersections to look out to the sides in order to see and take proper precautions to avoid collision with any vehicle, person or other object which may be in or may be approaching the course of his travel. At intersections of highways it is the duty of the operator to keep a lookout

ahead and also to his right and left. Any failure to perform that duty is a failure to use ordinary care."

"16. In this case the defendants contend that the plaintiff was guilty of contributory negligence which was a contributing and proximate cause of plaintiff's injuries. In this connection the Court instructs you that negligence may be predicated on an omission to see what could have been seen if injured plaintiff had looked with seeing eye."

A driver has the obligation to make such observation as will enable him to see what a person in the exercise of ordinary care could and should have seen under the circumstances then and there existing. The extent and degree of observation required to avoid being negligent must be determined from a consideration of all the factors disclosed by the evidence. The mere fact that a driver approaching an intersection from the right might have the right of way does not relieve him of the duty to make such observation as a reasonably prudent person should make under those circumstances.

While a driver having the right of way has the right, until he discovers otherwise, to assume that another will give way, yet he is still under an obligation to make that degree of observation as a reasonably prudent person would have made under such conditions. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. Whether in a particular case one must look to both right and left to clear himself of negligent conduct which might contribute to the accident again depends upon the facts. In the case at bar, the plaintiff driving north collided with defendants' car coming from his left. There were no influencing conditions on plaintiff's right. We think in this particular situation looking to the right is immaterial and there was no occasion for telling the jury that if he did not look to the right he was negligent. It is possible the jury might have been misled into finding the plaintiff guilty of contributory negligence for failing to look to the right when such a finding was legally impossible under the facts. The necessity of looking to the right and left is not a rule of such rigidity as will under all circumstances convict one of contributory negligence. One might be negligent for violating this rule of observation, but unless it is a possible contributing cause, it is immaterial. The standard for keeping a proper lookout is fairly stated in Alborn v. Arms, 74 S.D. 277, 52 N.W.2d 101, 104, as follows:

"Reasonable men certainly could infer from the quoted testimony, and in fact the conclusion seems inescapable, that appellant maintained a lookout to a greater or lesser degree, and therefore did 'look' as he approached the intersection. Appellant's admission that he did not 'look to the south' is

not inconsistent with his statement that the area of the intersection was within the breadth of his view. Whether or not appellant's lookout meets the standard set for the reasonably prudent man was a question for the jury and not the judge to decide for the reason that different inferences as to the adequacy of the lookout maintained by appellant can be reasonably drawn from attendant circumstances."

By the proposed instruction No. 16 the court was requested to tell the jury that if the plaintiff failed to look with a seeing eye, he may be guilty of negligence. Probably defendants meant this instruction to cover the obligation to see what under all the circumstances should have been seen, but the phraseology lacks clarity and is potentially misleading. There is evidence of some obstructions, and it may be that under the facts it was impossible to look with a seeing eye. Observation is required at the time and place where it would be reasonably conducive to preventing the accident. 2 Blashfield, Cyclopedia of Automobile Law, Part 2, section 1037. Unquestionably, defendants were entitled to a properly framed instruction concerning the duty of the plaintiff to keep a proper lookout according to the standard legally measuring his duty under the facts herein, but we do not think the proposed instructions meet this test.

During cross-examination of the plaintiff, the defendants identified and offered in evidence a photograph of plaintiff's car to illustrate the nature of the damage thereto. There was evidence the car was not in the same condition as at the time of the accident. The court excluded the exhibit. A ruling on such matters is left within the discretion of the trial court. Fabbio v. Diesel Oil Sales Co., 1 Wash.2d 234, 95 P.2d 788. We do not think the court abused its discretion and its ruling thereon was not reversible error.

Judgment reversed and cause remanded for a new trial.

PHELPS, C. J., and STANFORD, LA PRADE, and UDALL, JJ., concurring.