450 P.2d 399

**David ESQUIVEL and Ophelia Esquivel, his wife, Appellants,**

**v.**

**Jack NANCARROW et al., Appellees.**

**No. 8597.**

Supreme Court of Arizona.

In Banc.

Feb. 6, 1969.

Rehearing Denied March 4, 1969.

Healy, Laubscher & Dickerson, by Vernon F. Dickerson, Tucson for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Thomas A. Zlaket, Tucson, for appellees.

McFARLAND, Justice:

Appellants David and Ophelia Esquivel brought this action to recover for the death of their three-and-a-half-year-old son "Rickey," who was killed by an automobile driven by defendant Nancarrow.

Appellants list twelve assignments of error. The first two pertain to the admission of evidence to which they objected; the next five pertain to the trial court's refusal to give requested instructions; the last five pertain to instructions given over appellants' objections.

The accident took place at night, in Tucson, Arizona, on a dimly-lighted portion of Speedway Boulevard, which, at that time and place, was heavily traveled, and consisted of two Eastbound lanes and two Westbound lanes. Defendant-appellee Nancarrow was driving west in the lane nearest the north curb with his car's lights on. There were cars ahead and behind him, and cars coming toward him in the Eastbound lanes. There was evidence that he had been drinking, and that he was driving at approximately the speed limit of thirty-five miles per hour. Suddenly he saw almost immediately in front of his car two six-year-old boys running across Speedway from south to north. He braked lightly and swerved to avoid hitting them, and then heard and felt a thump. He immediately stopped, and ran back to flag oncoming cars, but was unable to prevent two more cars from running over a third boy, age three and a half, lying in the street, though there is some dispute as to whether those cars actually struck the child or merely straddled him as they passed over him. The three children were crossing the street together, with the two older ones slightly ahead of the younger one. All three were "running fast." Nancarrow did not see the third boy at all before the impact.

In Assignment of Error No. 8, appellants complain of an instruction given by the court to the effect that Arizona law requires a pedestrian, attempting to cross a street at a point other than at a crosswalk, to yield the right of way to all vehicles on the street. The objection is that this instruction directly contradicts another which told the jury that a three-and-a-half-year-old child is incapable of contributory negligence.

The point is well taken. Although the Arizona law which requires pedestrians crossing at places other than crosswalks, to yield to vehicles, applies to all persons, adult, and children alike, it cannot be the basis of attributing contributory negligence to a child of the tender years of the deceased. Therefore, it was not only unnecessary, but confusing to the jury.

Some light on the reasons for this instruction may be found in the colloquy in chambers at the time the instructions were settled. The following appears in the reporter's transcript of the record:

"By the Court: Here is maybe what I can do, like your number two. If I started out 'considering the circumstances surrounding the conduct of the defendants, you may consider the following:'

"By Mr. Dickerson: 'but you are not to consider this as contributory negligence on the part of the child.'

"By the Court: At the end of the instruction * * * I will remind them again * * * 'the law does not provide that a child of four years of age can be contributorily negligent.' I can put that in.

"By Mr. Briney: 'I thought you had already covered that.'

"By the Court: What Vern is saying is that he thinks I ought to point that out again right close to this instruction * *

"By the Court: * * * I give him a birthday cake with candles on it and he wants a stand to put it on. I wish I had wrote [sic] that down when I said it, because the way I said it was awful [sic] good. * * * This is going to read 'In considering the conduct of the defendants on the issue of whether or not the defendants were negligent, you are instructed that the law of Arizona pro-

vides that every pedestrian. * * *" Yes, that will be given as modified. That Briney is a persuader."

In other words, it was the court's idea that, by prefacing his reference to the law concerning pedestrians with the words "In considering the conduct of the defendants," he was preventing the jury from thinking that the child was governed by that instruction. We cannot be sure that the instruction would have that effect. It was confusing, and could have been understood as contradicting the instruction on the child's contributory negligence. Worst of all, it was not applicable to the facts in the case, as there was no adult pedestrian involved. In Pacific Greyhound Lines v. Uptain, 81 Ariz. 359, 306 P.2d 281, and in City of Phoenix v. Mubarek Ali Khan, 72 Ariz. 1, 229 P.2d 949, the following statement was quoted from an opinion of this Court in Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325:

"An instruction not based upon the evidence in the case is misleading and calculated to induce the jury to suppose that such a state of facts, in the opinion of the court, is possible and may be considered by them."

In Glenn v. Chenowth, 71 Ariz. 271, 226 P.2d 165, this Court made the following statements:

"* * * Abstract propositions of law even though correct are not favored in Arizona.

* * * * * *

"It is a well-settled proposition of law that instructions must not be conflicting or contradictory. [Cases cited.] * *"

In the case of Daun v. Truax, 56 Cal.2d 647, 16 Cal.Rptr. 351, 365 P.2d 407, the Supreme Court of California had before it almost exactly the same conflict in the instructions, although the instructions in that case went further and stated that the violation of the statute was negligence per se. That additional fact, however, does not invalidate the court's reasoning. It said:

"Reliance is had on the well-settled rule that instructions must be read together, and, it is urged, that, when so read, any conflicts in the instructions disappear * * * It is quite clear * * * that the instructions are not only ambiguous but actually conflicting."

In Gilbert v. Quinet, 91 Ariz. 29, 369 P. 2d 267, we had before us a case of a child crossing a street in front of a bus. The trial court instructed the jury that the bus driver might assume that others would not violate the law, and then instructed on the duty of care of a small child. As in the instant case, contributory negligence of the child was not in issue. We said:

"* * * A defendant's negligence is not dependent upon what he might have foreseen as to a particular plaintiff, but upon the foreseeability of danger of harm to anyone in the plaintiff's position. * * * A bus driver who fails to keep a proper lookout * * * is not any less negligent when he runs into a knowledgeable seven year old than when he runs into a toddling two year old, though in the former case he may have a defense of contributory negligence. * *"

 Appellants also complain that it was error to instruct the jury on unavoidable accident. Since the case was tried, in Trickel v. Rainbo Baking Co., 100 Ariz. 222, 412 P.2d 852, we held that "it is always error to give an instruction on unavoidable accident." However, the above instruction makes the unavoidable-accident instruction even more objectionable, as the jury might conclude since the child was crossing at a point other than a crosswalk, it was an unavoidable accident. For these reasons we conclude that the case must be reversed.

Since the case must be remanded for a new trial, we will make some observations on the other assignments of error, many of which would not otherwise be considered, because the objections were not timely made, or were not sufficiently specific.

■ Appellants claim that the trial court erred in allowing a police officer to answer the following question:

"Based upon your experience would you say that anything was brought to your attention that would indicate that Mr. Nancarrow was intoxicated?"

Appellants' objections are that the question calls for an opinion, and that foundation laid was insufficient. The case they cite to support their view—Dobbertin v. Johnson, 95 Ariz. 356, 390 P.2d 849—is not in point. The rule is well-settled, and nearly universal, that lay witnesses who have had a sufficient opportunity to observe a person may testify as to whether that person appears to be intoxicated. Randal v. Deka, 10 Ill.App.2d 10, 134 N.E.2d 36; Guedon v. Rooney, 160 Or. 621, 87 P.2d 209, 120 A. L.R. 1298; Udall on Arizona Evidence, page 39. Prior to asking the question, the examining attorney had the witness describe the extent of his observation. It is for the jury to determine the weight to be given the opinion.

Appellants next contend that the trial court erred in admitting parts of a statement made by defendant Schwatken, in writing, to an insurance adjuster, because the parts objected to were not against interest and were hearsay.

Appellants themselves offered part of the statement as an admission against Schwatken, after first being warned by the court that if they did so, opposing counsel would be permitted to offer the rest of the statement. Since the statement was offered against defendant Schwatken, and since he is no longer involved in this lawsuit and cannot be a party at the new trial, we do not deem it necessary to go into the merits of this assignment of error.

■ Appellants also contend that the court should have given their requested instruction No. 3 which purported to instruct the jury that a driver who sees, or should see, a child in the street must make every effort to avoid striking him. The instruction is erroneous in requiring a party to make every effort to avoid striking a child

he does not see. The undisputed evidence showed defendant did not see the child.

Appellants contend that the court should have given their requested instruction No. 6 to the effect that experience justifies the inference that one who looks in the direction of an object clearly visible sees it, and failure to see that which is in plain sight requires the conclusion that either the evidence of having looked was false, or the looker was "negligently inattentive."

■ This instruction does not apply to the evidence in this case, which indicated that the deceased child was *running* across a dimly-lit street having four lanes of heavy traffic, at night. It is common knowledge that one's car lights illuminate only the path ahead and the shoulder to the right, so as not to blind on-coming motorists. The three lanes to Nancarrow's left would have been relatively dark, and the presence of the third child might easily have been difficult to discover until he had almost reached the lane of Nancarrow's auto. The instruction, therefore, in referring to the child as "that which is in plain sight" is inapplicable to the facts of the instant case.

■ Appellants object to the deleting from their requested instruction No. 8, words indicating that it was Nancarrow's duty to keep his car "under such control that * * * he can stop as quickly as required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position." We think that the deletion was proper. A court cannot give every instruction requested, merely because it is correct, and there is some doubt whether the above deleted words would have been correct in the light of the evidence in the instant case, and of our holding in Schmerfeld v. Hendry, 74 Ariz. 159, 245 P.2d 420, in which we held that it was proper to instruct that "a driver is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances." In any event, reading the instructions as a whole, we can see no rea-

son to require the giving of that part of the instruction which was deleted here.

■ Appellants next argue that it was error to refuse a requested instruction that if a child is in the highway for such a length of time that the defendant "in the exercise of due care should have seen him and avoided the accident, the defendant is liable. * * *" The length of time the child is in the highway is not the test. The exercise of due care required of a defendant was covered by other instructions.

■ Appellants also complain that the court refused to give an instruction that:

"If an autoist cannot see where he is going, he should stop. If his vision is limited, he should have control of his car so as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules, he is guilty of legal negligence."

Such an instruction clearly would have been erroneous. It was taken from Atchison, Topeka, and Santa Fe v. Parr, 96 Ariz. 13, 391 P.2d 575. But that case involved a car driving in "a dust storm so severe that objects could not be seen more than a few feet ahead." The evidence in the instant case shows it was a clear night, and that the car was equipped with good headlights. As previously pointed out, the duty of care was covered by other instructions. Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288.

■ Appellants contend that the court erred in giving defendant's requested instruction No. 4, that a driver "is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances."

Their argument is that there is no evidence of "sudden appearance," because the child must have crossed the three lanes of traffic to the left of Nancarrow's lane, and therefore the facts fit such cases as Womack v. Banner Bakery, Inv., 80 Ariz. 353, 297 P.2d 936. In Womack we held that where a driver observed a child in a position of safety, not in the street, it was error to instruct that the driver need not an-

ticipate that the child would run into the street. The facts involved were entirely different from those of the instant case, and though it would have been better to refuse to give the instruction, we cannot point to it as reversible error.

■ Appellants next contend it was error to instruct the jury that it is the duty of parents of children of tender years to use reasonable care to protect them against the known hazards of being present on a street, and that to suffer such a child to go upon a street unattended may constitute negligence. The complaint is not that the instruction is bad law, but that there was no evidence at all to show any negligence on the part of the parents.

It must be admitted that the proof of the contributory negligence of the parents was weak. But the fact that the child was in the street, unaccompanied by either parent or by any one in whose custody the child had been placed, is a fact from which lack of due care on the part of the parents might be inferred, in the absence of any evidence by the parents of having placed some responsible person in charge of the child. All that the parents showed was the father was away from home, and the last time the mother saw the boy, he was watching television. Under all the circumstances, we cannot find any error in the instruction complained of.

Lastly, argue appellants, it was error to instruct the jury that

"* * * if you find * * * that the death * * * was not caused in whole or in part by the motor vehicle driven by any particular defendant, you must return your verdict in favor of that defendant."

The complaint is that the instruction was bad because it used the word "must," which was banned by our decision in Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444, and cases following it.

■ This is the first time that any one has attempted to extend the rule of that case to negligence, as well as to contributory negligence. The Layton case cannot be

·so interpreted, but even if it could the rule ·would not apply to the instruction given in the instant case because in it the court was not referring even to negligence. It specifically referred only to causation. Since there was some doubt as to whether one of the defendants' vehicles actually struck the boy, the instruction was proper to tell the jury that, in such a case, it *must* find for that particular defendant. In the retrial, this issue will not occur.

For the above reasons, this case is re-·versed and remanded for a new trial in ·conformity with this opinion.

UDALL, C. J., and LOCKWOOD, V. C. J., concur.

STRUCKMEYER, Justice (dissenting).

I am unable to agree in the reversal of ·this cause being of the view that the decision of the majority is unsound in principle and contrary to the better reasoned cases ·not only of this state but elsewhere.

That the case may be placed in the proper perspective certain facts, which are substantially undisputed, should be emphasized. The defendant, Nancarrow, was ·traveling west on east Speedway, a heavily traveled through boulevard in the City of ·Tucson, Arizona, at dusk or very shortly thereafter. Speedway had four lanes of ·traffic, two for eastbound travel and two for westbound travel. Nancarrow was in ·the outside or north lane following a car that was 50 or 60 feet ahead in the same lane of travel. In the middle of the 5900 block he saw two children about 6½ years ·of age running north across the highway directly in the path of his vehicle and be-·tween his vehicle and the car he was following. He veered to the left while applying his brakes and struck a third child, about 3½ years old whom he never saw ·who was trailing behind the two older children.

An independent and impartial witness who was approaching the scene of the ac-·cident from the opposite direction testified:

"Q. And what did you see next?

"A. I saw the two children running across the street, and I slowed down, and I got in the North lane, and, as I anticipated a left turn in here, and then I saw the object in the air, * * *.

" * * *

"Q. Did you see the first car strike the boy?

"A. No. I didn't see the initial impact.

"Q. What was the first thing you saw?

"A. When the body was in the air.

"Q. Did you see any children in the street?

"A. Yes. I saw two children running south, [sic] about forty or fifty feet ahead of me, and I had just turned on my lights, and as I approached the Wyseman's area, I saw an object in the air—I don't know what it was—I didn't know what it was at that time.

" * * *

"Q. And you were going in an easterly direction?

"A. Yes.

"Q. And how fast were you traveling?

"A. About twenty-five miles an hour."

## THE INSTRUCTION ON THE DUTY OF A PEDESTRIAN TO YIELD THE RIGHT OF WAY

The majority find two grounds for reversal. First, they find error in the trial court's instruction to the jury in the language of A.R.S. § 28–793, subsec. A concerning the duty of a pedestrian to yield the right of way to motor vehicles. The court instructed:

"*Now in considering the conduct of the defendants on the issue of whether or not the defendants were negligent,* you are instructed that the law of Arizona provides that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehi-

cles upon the roadway. * * *." (Emphasis supplied.)

Under the liberal rules of pleading allowed in this state, plaintiffs were not required to specify in their complaint specific acts of negligence and they did not. They alleged common law negligence, the failure to use ordinary care, in this language:

"* * * that at said time and date the defendants were driving and operating their automobiles in such a negligent and careless manner as to cause their automobiles to strike Eric James (Rickey) Esquivel, causing the injuries and damages set forth hereinafter."

Negligence is defined as the doing of an act or the failure to do an act which a reasonable man should realize involves an unreasonable risk of causing harm to another. Alires v. Southern Pacific Co., 93 Ariz. 97, 378 P.2d 913; Salt River Water Users' Assoc. v. Compton, 39 Ariz. 491, 8 P.2d 249. It is the risk reasonably to be perceived which defines the duty to be obeyed. Bryan v. Southern Pacific Company, 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1. Whether defendant's conduct constituted negligence, [whether defendant was acting as a reasonable, prudent man], is to be tested in the light of all the facts and circumstances existing at the time of the accident. One of the circumstances was that defendant was driving on a through boulevard in the middle of the block.

In Arizona the driver of a motor vehicle does not have the duty to anticipate the presence of others unlawfully using the highway except under special circumstances where a duty to anticipate might be required, Krauth v. Billar, 71 Ariz. 298, 226 P.2d 1012; Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201; Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816, and a motorist is entitled to assume that others using the highway will obey traffic regulations. Cf. Haner v. Wilson-Coffin Trading Co., 49 Ariz. 402, 67 P.2d 487.

It is, of course, fundamental that a defendant has the same right as a plaintiff to have his theory of the case fully explained to the jury:

"We reiterate that it is the duty of a trial court to instruct the jury on all phases of the law applicable to the various fact situations developed during the course of the trial. [citations]." Layne v. Hartung, 87 Ariz. 88, at p. 94, 348 P.2d 291, at p. 294. Overruled on another point in Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80.

Anything less would, of course, be a substantial denial of the equal protection of the law.

It was accordingly the defendant's absolute right to have the jurors told that in Arizona the legislature has required pedestrians to cross at intersections or marked crosswalks. In no other way could it be brought to the attention of the jurors that the defendant did not have the duty to anticipate the presence of persons unlawfully crossing the highway. And it can hardly be otherwise, for if a driver of a motor vehicle must anticipate that children will not be using the proper crosswalks traffic flow will be brought to a standstill. A jury, irrespective of the speed limit, could find a defendant negligent for the reason that he failed to drive at a speed sufficiently slow to avoid an accident.

The majority argue that the instruction contradicts the instruction which told the jury that a 3½ year old child is incapable of contributory negligence. I could not agree less. The defendant, Nancarrow did not in his answer allege that the deceased child was contributorily negligent and the record plainly shows that no issue of that nature was presented to the jury. The defendant did raise the question of the contributory negligence of the child's parents. The trial court clearly advised the jury of the distinction in this language:

"* * * the law conclusively presumes that a child of the age of the plaintiff's child, Rickie Esquivel, is incapable of contributory negligence. Hence, you need consider the defense of contributory negligence only in respect to the conduct of the plaintiff's parents."

An examination of the claimed erroneous instruction establishes beyond possibility of argument that the trial court precisely limited the jury's consideration of the Statute, A.R.S. § 28–793, subsec. A to a determination of the issue of whether defendants were negligent. There was, therefore, no inherent inconsistency between the two instructions, for the one told the jury that the deceased child could not be negligent and the other was specifically limited to the defendant's negligence. To conclude that the two instructions are incompatible and confusing is to presume as the majority seem to, that the jury was incapable of understanding the plain English language used by the court. If this is the law, then every case is in danger of being reversed simply because the appellate court may arbitrarily assume that juries do not have the intelligence to apply the clear, unequivocal instructions submitted to them by trial judges. This kind of nonsense brings discredit upon courts and leaves the public with little faith in the judicial processes.

One further word before ending the discussion on this point. The majority cite and quote from Gilbert v. Quinet, 91 Ariz. 29, 31, 369 P.2d 267. There a bus ran into a 6 year old child. The majority do not recognize that the factual situation is dissimilar in two very significant aspects. It was daylight and the child did not appear suddenly in the defendant's line of traffic. In the decision the court states the facts:

"There were two cars parked, one on either side of the street, near the accident scene, but both were south of the location of the accident and *in no way interfered with the bus driver's visibility.* * * * As the defendants' bus approached at from twelve to fifteen miles per hour the plaintiff started to run across the street toward his home, traveling diagonally in a southwest direction. The child crossed the east parking lane, the northbound traffic lane and most of the southbound traffic lane before he was struck by the right front fender of the bus. The defendant driver testified that he first saw the child when he was a lit-

tle to the left of the bus and about in the middle of the street." (Emphasis supplied.) 91 Ariz. at 31, 369 P.2d at 268. We said:

"A bus driver who fails to keep a proper lookout * * * is not any less negligent when he runs into a knowledgeable seven year old than when he runs into a toddling two year old, though in the former case he may have a defense of contributory negligence." 91 Ariz. at 33, 369 P.2d at 269.

We criticized the giving of an instruction which in effect told the jury that the bus driver was under no duty to anticipate the presence of the child because the child's presence in the street was readily apparent long before the bus driver saw him and hence the instruction miscast the issues and was not applicable to the case.

## THE INSTRUCTION ON UNAVOIDABLE ACCIDENT

The court below instructed the jury:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply mean an accident that occurred without having been proximately caused by negligence.

"Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still no one may be held liable for any injuries resulting from it. No one may be held liable for injuries resulting from an unavoidable accident. Whether or not the accident in this case was unavoidable is of course a question of fact for you to determine and in giving this instruction I do not imply any opinion or suggestion as to what your findings should be."

The Supreme Court of California in discussing a case in which the identical instruction was given affirmed a judgment for the defendant without dissent stating:

"No precise formula can be drawn for deciding whether an error in instructions has resulted in a miscarriage of justice.

For this purpose the appellate court must review the entire record, including the evidence, and in each instance the determination whether the error requires a reversal depends upon all the circumstances of the particular case. * * *" Bridgman v. Safeway Stores Inc., 53 Cal.2d 443, 2 Cal.Rptr. 146, 150, 348 P.2d 696, 700.

In 1965 in our leading case of City of Phoenix v. Camfield, 97 Ariz. 316, 400 P. 2d 115, we followed California holding that to claim error in the giving of an unavoidable accident instruction "a plaintiff must show prejudice," 97 Ariz. at 324, 400 P.2d 115. We approved in principle the California rule saying:

"In California although the instruction is error the question of whether the giving of the instruction is reversible depends on whether the error is prejudicial. [citations]." 97 Ariz. at 324, 400 P.2d at 121.

Subsequent to Camfield and Bridgman, in Trickel v. Rainbo Baking Co. of Phoenix, 100 Ariz. 222, 412 P.2d 852, I dissented for the same reason I am dissenting here—that an unavoidable accident instruction "is but a reiteration of the legal principle that negligence is the failure to exercise ordinary care; * * *." 100 Ariz. at 231, 232, 412 P.2d at 858. There I pointed out that the overwhelming weight of the evidence tended to establish that the child darted in front of the Rainbo Baking Company truck and that the jury could have found that the defendant was free from negligence. I could find no prejudice in the giving of an unavoidable accident instruction being of the opinion then that the majority in taking the plaintiff's version of the evidence substituted its judgment for that of the jury.

This case completely departs from Camfield and the California cases from which the doctrine of prejudice was taken since no serious attempt has been made to justify the decision as to how or why the instruction was prejudicial. All the direct testimony and reasonable inferences establish that it is a child "darting" case. As to this it has been repeatedly held that where a child of tender years suddenly darts into the street in front of an automobile, a plaintiff is not prejudiced by the giving of an instruction on unavoidable accident. Dietz v. Mead, 52 Del. 481, 160 A.2d 372; Baca v. Baca, 71 N.M. 468, 379 P.2d 765; Shaw v. Null, Tex.Civ.App., 397 S.W.2d 523; Carraway v. Johnson, 63 Wash.2d 212, 386 P.2d 420.

For the foregoing reasons I dissent.

HAYS, Justice (concurring in part and dissenting in part).

I agree with the result reached by the majority in reversing and remanding. It should be made clear to court and counsel that the giving of an instruction on unavoidable accident is reversible error.

I must join with the dissent, however, in upholding the action of the trial court in instructing the jury as to the law requiring pedestrians to cross at intersections or marked crosswalks.