POWELL, APPELLEE, *v.* MONTGOMERY, APPELLANT.

[Cite as Powell v. Montgomery (1971),
27 Ohio App. 2d 112.]

(No. 862—Decided February 26, 1971.)

*Mr. Clyde A. Collins,* for appellant.
*Messrs. Bannon, Howland, McCurdy & Dever,* for appellee.

STEPHENSON, J. This is an appeal upon questions of law from a judgment of the Scioto County Court of Com-

mon Pleas awarding damages in favor of Ray E. Powell, Jr., plaintiff and appellee herein, and against Harold E. Montgomery, defendant and appellant herein. Trial was held prior to July 1, 1970, the effective date of the rules of civil procedure.

The parties will be hereafter referred to as they stood in the trial court. The suit arose as a result of a collision on April 23, 1966, between motor vehicles operated by the parties on state highway 335 in Scioto county. The petition alleged negligence on the part of the defendant, Harold E. Montgomery, which proximately caused injuries to the plaintiff, the most serious being a fracture of the right radius. Claim was made for pain and suffering, limitation of motion of the wrist, permanent disabilities from the injury, hospital and medical expenses which would continue in the future, loss of wages and impairment of earning capacity.

During the course of the trial, expenditures for medical treatment, loss of wages and property damage amounting to $100 was stipulated. The jury returned a general verdict in the sum of $6,500.

Defendant has instituted an appeal to this court and assigned the following errors.

"First Assignment of Error:
The verdict and the judgment were contrary to the manifest weight of the evidence and contrary to law.

"Second Assignment of Error:
The trial court committed prejudicial error in instructing the jury that it could assess damages for future medical expenses, future pain and suffering and future loss of earnings and loss of earning capacity."

It is the claim of plaintiff, by his petition and evidence, that as he was proceeding north on route 335, a two lane highway, the defendant was operating his vehicle in a southerly direction and without warning turned his vehicle left and partially into the path in which plaintiff's vehicle was travelling, causing the collision. Defendant asserts, under his first assignment of error, that the evidence supporting plaintiff's claim in this respect is not credible and that it establishes plaintiff was contributorily negligent.

The trial court directed a verdict of negligence in favor of plaintiff, but submitted the issue of proximate cause and damages and contributory negligence to the jury.

Plaintiff contends a verdict as to proximate cause should have also been directed in his favor. We deem it unnecessary to consider that contention inasmuch as the jury resolved the liability issue in favor of plaintiff.

We have examined the record and find ample evidence to support both the direction of the verdict as to negligence by the trial court, and the necessary findings of proximate cause from defendant's negligence and the rejection of contributory negligence of plaintiff by the jury in its verdict. The first assignment of error is therefore overruled.

With respect to the second assignment of error, it is noted that no exception, general or special, was taken to the charge of the trial court.

R. C. 2321.03 provides:

"An exception is not necessary, at any stage or step of the case or matter, to lay a foundation for review whenever a matter has been called to the attention of the court by objection, motion, or otherwise and the court has ruled thereon. *Error can be predicated upon erroreous statements contained in the charge, not induced by the complaining party, without exception being taken to the charge.*" (Emphasis added.)

The statute is inapplicable, however, if the alleged error is one of omission and the charge is correct so far as it goes. If the claimed error is one of commission, an exception is not necessary for review. See *Karr, Admr.,* v. *Sixt,* 146 Ohio St. 527. We are of the view the claimed error of charging on the issue of future damages, which issue is claimed not to be supported by evidence, is an error of commission and, hence, reviewable in this court.

With respect to future damages, the trial court charged as follows:

"You will note that the plaintiff also claims that the injury is permanent. That plaintiff will incur future expenses. That plaintiff will incur or experience pain in the future. As to such claims, no damage may be found except that which is reasonably certain to exist as a proxi-

mate result of the collision. You are not to speculate in regard to future damages. The law deals in probabilities and not mere possibilities. In determining future damage you may consider only those things you find from the evidence are reasonably certain to continue. You will consider whatever loss of earnings the evidence shows the plaintiff sustained as a proximate result of the injury. You will not award as damages for loss of wages an amount more than $2,813.06. You will also consider whatever loss, if any, of any earnings the plaintiff will, with reasonable certainty, sustain in the future as a proximate cause of the injury. The measure of such damage is what the evidence shows with reasonable certainty to be the difference between the amount he was capable of earning before he was injured and the amount he is capable of earning in the future in his injured condition.''

It is evident by the above charge that the jury was allowed to include in its verdict awards for future medical expenses, future pain and suffering and impairment of earning capacity.

This assignment of error presents the issue of the sufficiency of the evidence to allow the court to charge the jury upon such claims.

A leading writer in the field of damages states, with respect to future damages from personal injury, the following:

''If a personal injury can be shown to be reasonably certain to produce future effects, damages for those prospective effects may be awarded. Thus, if a permanent injury, such as a disability, exists, the award may include compensation for future trouble and frustrations which have not yet begun. But even if the injury is not permanent, such future effects should be included. For example, in personal injury claims, the award may cover future pain and suffering, future disability (even without medical opinion evidence), loss of earnings, and expenses. Evidence may be given to show what future damages will follow a tortious injury, as the basis of an award for future damages to amplify an award for damages already suffered. ''Reasonable certainty'' of future results must

be shown in most states, and "reasonable probability" in some states. *But in either case, some evidence of the future damage must be shown, in order to justify an award of future damages.* What kinds or elements of damage may be considered is a question of law. What is the amount or value of each element is a question of fact. If the existence of any element is in issue, this too is a question of fact." (Emphasis added.) Oleck, Damages to Persons and Property, Section 94. Ohio is within those jurisdictions allowing recovery for future damages that are "reasonably certain" to result from the injury. *Pennsylvania Co.* v. *Files,* 65 Ohio St. 403; and *Johnson* v. *English,* 5 Ohio App. 2d 109.

The obvious and salutary reason for restricting jury consideration as to future damages to that which the evidence discloses are reasonably certain to result is to prevent conjecture and speculation with respect to such items.

The evidence discloses that the plaintiff suffered cuts, an injury to the left knee and right thigh. The evidence does not disclose any permanency with respect to these injuries. The principal injury was a fracture of the right wrist described as a fracture "in the distal end of the right radius." Plaintiff's arm was placed in a cast and later on a splint and the fracture subsequently healed. Plaintiff's physician testified, while in the hospital, that plaintiff suffered pain in moderate amount from the fracture. He was discharged by his physician in July, 1966, with no subsequent treatment thereafter. The plaintiff's physician examined him two weeks before trial. The pertinent testimony of plaintiff's physician on direct examination was the following:

"Q. At the time you examined him did you find residue of the accident existing?

"A. In comparison with the same location of the opposite radius, there's a minor amount of thickening on what I would call the ventral—the inside of the distal end —it's a little thicker than the other one.

"Q. Is this a condition of permanency that would continue to exist?

"A. I would assume so, yes.

"Q. Would your answer be yes?

"A. Yes.

"Q. Did you talk to the patient at the time of this examination?

"A. Yes, I did.

"Q. As to the pain he was having and functional problems he was having?

"A. He told me he had pain in this wrist when he bumped it. I asked him to compare it with the opposite wrist and he said it was greater. I asked him about strength, because I started on him at the beginning he would have to use the muscles when he came out of the cast. I tested him as to grip and it seemed good and adequate in the wrist but he described something to me that would fit into the sprain category when he put his hand on some object and would bear weight on it, it would hurt him.

"Q. Did you find this condition did exist with him?

"A. I can't see pain. I don't know about that.

"Q. Do you have an opinion whether this condition would exist in this arm and would have pain?

"A. I think it's probable he would have a difference in this wrist.

"Q. You think it probable?

"A. Probable, yes."

On cross examination the physician testified to the following:

"Q. You stated when you saw Mr. Powell a couple weeks ago that his strength was there. You thought he had good strength?

"A. Yes, sir.

"Q. Did you compare that with the right and left?

"A. I compared the two. The significant thing to me was he seemed to have a little less motion and ability to bearing weight on his right hand.

"Q. But he did give some complaints about some soreness there?

"A. Yes, sir.

"Q. Was there anything you could find that would indicate to you why this was there?

"A. No, sir, the only thing that was noticeable was a

little thicker ridge on the radius toward the distal end.''

Additionally, the plaintiff testified that there was a knot on his wrist as a result of the accident, that he has suffered pain from the accident to time of trial.

The medical testimony as to residuals from the fracture by defendant's physician's witness was negative. The issues with respect to future medical expenses and future pain and suffering overlap and we consider them here, together. We have examined the record with care, and, unlike most cases in this respect, there is no testimony by plaintiff, his physician, or any other witness that the injury would require medical treatment by a physician or hospitalization in the future, costs of such treatment or the duration of any such treatment.

In 69 ALR 2d 1261, there is an extensive annotation upon the question of the requisite proof to permit future medical expenses as items of damage in personal injury actions. Under Section 3 [b], Ohio is classified as a jurisdiction requiring expert medical testimony to allow recovery of future medical expenses. The Ohio case therein cited is *Tully* v. *Mahoning Express Co.*, 161 Ohio St. 487, which holds that evidence as to the extent of further medical treatment, future hospitalization and estimated expense for such treatment can only be given by an expert witness.

It is plaintiff's contention, with respect to future damages, that where there is an objective injury and medical testimony as to permanency, such is sufficient to predicate a charge to the jury under the holding of the Ohio Supreme Court in *Day* v. *Gulley*, 175 Ohio St. 83.

In the *Day* decision, the court drew a distinction between injuries which by their objective nature, such as the loss of an arm or leg, will support a conclusion of permanent injury and future pain and suffering and those injuries, entitled subjective, which require expert testimony to be presented to the jury to prevent speculation.

Plaintiff classifies the injuries herein as objective by reason of the knot and the permanent thickening of the bone and, hence, concludes no expert testimony was herein required. By our view, the critical question is what is

meant by "objective injury." Whether the knot on the arm could be seen or felt and whether a bone was thicker because of the healing process is not alone decisive, as it might be if the issue were whether the symptoms were objective or subjective. We interpret the *Day* decision to mean that an injury is "objective" when, without more, it will provide an evidentiary basis for a jury to conclude with reasonable certainty that future damages, such as medical expenses will probably result. See *Spargur* v. *Dayton Power & Light Co.,* 109 Ohio App. 37.

It is not disputed that the evidence herein will support a finding of permanent residual injury. The court charged the jury on permanent injury and no complaint is raised in that respect.

With respect to the pain that plaintiff suffers, we note, there, absence of medical evidence as to what causes such pain and how long such pain may continue.

In *Cusumano* v. *Pepsi-Cola Bottling Co.,* 9 Ohio App. 2d 105, at 120, the following is stated:

"The general rule appears to be that 'if the injury is an objective nature (such as the loss of an arm, leg, or other member) the jury may draw their conclusions as to future pain and suffering from that fact alone (the permanency of such injury being obvious); whereas there must be expert evidence as to future pain and suffering or permanency where the injury is subjective in character.' *Day* v. *Gulley* (1963), 175 Ohio St. 83, 86; Annotation 115 A. L. R. 1149, 1150 (1938); 22 American Jurisprudence 2d 399, Damages, Section 299.

"In *McCoy* v. *Gilbert* (1959), 110 Ohio App. 453, a case wherein the injuries suffered by the plaintiff were more extensive than in the instant case, see 110 Ohio App. at 460, the Court of Appeals held that, in the absence of expert testimony as to how long in the future the plaintiff's pain and suffering would continue, a charge to the jury that it might find that the plaintiff suffered permanent injuries is prejudicial error. Although this case involved permanent injury (instead of future pain and suffering), it indicates the Ohio division between objective and subjective injuries. Consequently, it would follow that the

injuries involved in the instant case would be classified as subjective.

"In *Brush* v. *Eastern Motor Dispatch, Inc.* (Franklin County Court of Appeals, 1950), 61 Ohio Law Abs. 219 (involving an automobile-truck collision in which plaintiff suffered injuries), the trial court ruled that permanency was not pleaded (except as regards a scar on the knee) and hence no testimony could be offered thereon, yet in its general charge it told the jury that it could consider any pain and suffering that 'it is reasonably certain that the plaintiff will suffer in the future.' The Court of Appeals held this charge to be prejudicial error, and, in paragraph two of the syllabus, stated: 'Where no evidence has been presented as to the possible duration of pain and suffering occurring as a result of an injury, an instruction to the jury that they could consider future pain and suffering in assessing damages, is erroneous and prejudicial to the defendants.' "

In *Brush* v. *Eastern Motor Dispatch, Inc.*, 61 Ohio Law Abs. 219, as here, there was a permanent residual from the injury consisting of a scar on plaintiff's knee. Also, like here, the court properly charged upon permanent injury. Irrespective, however, of the permanent injury, the instruction as to future pain and suffering was held erroneous.

We believe the proper rule with respect to future medical expenses is well stated by the Supreme Court of Arizona in *Henderson* v. *Breesman*, 77 Ariz. 256, 259, 269 P. 2d 1059, 1061:

"Without a detailed description of his injuries, we think all the evidence would warrant a finding of some permanent injury. We are unable, however, to find any evidence that would authorize the jury to consider future medical expenses or permanent impairment of earning capacity. The mere fact alone that there may be some permanency to the injury is not enough. This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item. *Consolidated Arizona Smelting Co.*

v. *Egich,* 22 Ariz. 453, 199 P. 132; 25 C. J. S., Damages, Sec. 162b(5), page 829. Of course, at best it is a mere estimate and cannot be determined with accuracy, but there must be some evidence to authorize the estimate. The jury cannot be left to guess the probable nature of future treatment or the probable expense thereof.''

The members of this court cannot determine from the evidence without speculation, and neither could the jury, whether plaintiff's injury would require medical or hospital treatment in the future, and, if so, at what cost, nor can it be determined from the evidence whether plaintiff will continue to suffer pain, as he has from the date of the accident to trial, in the future and, if so, for what period of time it will continue. Hence, we are of the view that the injury here in question was not an ''objective injury'' as contemplated in *Day* v. *Gulley,* and we hold the court erred in the submission of such issue to the jury.

The same infirmity of a lack of an evidence base requires us to also hold that error was committed in the submission of the charge upon impairment of earning capacity.

The leading case in Ohio is *Hannah* v. *Stoll,* 112 Ohio St. 344, which provides in the second paragraph of the syllabus:

''Where impairment of earning capacity is pleaded as special damages, it is essential that evidence be adduced from which an estimate thereof may be made by the jury, and in the absence of evidence upon the subject, it can not properly be submitted to the jury as an element of damages.''

The evidence herein upon this issue reveals that plaintiff was off work after the accident until October 3, 1966, at which time he returned to his former job, lost no more work, and was so engaged at the time of trial.

The evidence further discloses that in his work at General Motors he does some lifting; that he is required to lift with his left hand; and that when he lifts he has pain which resembles that accompanying a sprain. The pain is not as frequent as after the accident. His wages have increased moderately since the accident.

There is no showing that he cannot do the same work

after the accident that he did before, nor is there any evidence of what other work he is suited to perform that would affect his ability to earn money in the future.

It is a rule of universal application that there must be evidence of the probable effect of the plaintiff's injury upon his future earnings from which the jury may, with reasonable certainty, determine the effect of the injury upon his earning capacity. 16 Ohio Jurisprudence 2d, Damages, Section 58, 22 American Jurisprudence 2d, Damages, Section 298, *Gibbons* v. *B. & O. Rd. Co.,* 92 Ohio App. 87.

In 18 A. L. R. 3rd 88, there is located an annotation regarding what constitutes sufficient evidence warranting the submission of the question of impairment of earning capacity to the jury. The general rule is set forth as follows:

"As in the case of tort damages generally, damages for impairment of earning capacity cannot be recovered in a personal injury action where there is no evidence of such impairment or no evidence from which damages therefor can be calculated. Although the evidence need not show conclusively or with absolute certainty that earning capacity has been impaired, mere conjecture or speculation does not warrant an award of damages therefor in personal injury actions. All damages, however, are subject to some uncertainties and contingencies, especially those that seek to compensate for future injuries. Accordingly, most courts hold that in order to warrant a recovery for impairment of earning capacity in personal injury actions, the impairment of earning capacity must be shown with reasonable probability, and there must be evidence which will permit the jury to arrive at a pecuniary value of the loss."

We are of the view that the rationale of *Day* v. *Gulley, supra,* would apply with equal force where an impairment of earning capacity is claimed. Thus, if the injury is such that by its nature, impairment of earning capacity must necessarily follow, additional evidence would be unnecessary to establish such impairment. We are of the view,

however, that the evidence of injury in this case is not of that nature.

In view of the fact that the employment of plaintiff is in a factory, the exact nature of the work not being set forth in the record, the plaintiff is not aided by the rule which allows a jury to determine probable earnings based on common knowledge and experience. See *Curry* v. *Bd. of Comm.*, 135 Ohio St. 435; *Epps* v. *Clymer Materials Co.*, 104 Ohio App. 173.

This case is somewhat similar to that before the Supreme Court of Nebraska in *Schwab* v. *Allou Corporation*, 177 Neb. 342, 128 N. W. 2d 835. The evidence established that the plaintiff, a school teacher, suffered a partial permanent disability to her ankle which caused discomfort in standing while teaching and in certain work on the playground with the students. There was evidence she had lost 39 days work after the accident and then returned to her task of teaching. The court noted there was nothing to show that she would not be able to earn the same salary in the future, or to what extent her earning power would be diminished.

In reversing upon the ground of error in giving an instruction upon impairment of earning capacity, the court stated, at page 355:

"Damages for a permanent injury may not be based on speculation, probabilities, or uncertainty but must be shown by competent evidence that such damage is reasonably certain as the proximate result of the pleaded injury. A person to whom another has tortiously caused harm is entitled to compensatory damages if he establishes by proof the extent of such harm and the amount of his damage with reasonable certainty * * * . [Citations omitted.] Considering these rules it is evident that the plaintiff did not prove permanent loss of earning power although she did show permanent injury."

Appellee has suggested, in his brief, while denying error, that if error as to the charge exists, it may be properly cured by a remittitur and cites as authority *Connelly* v. *United States Steel Co.*, 161 Ohio St. 448 (ap-

parently intending to cite *Tully* v. *Mahoning Express Co.,* 161 Ohio St. 457). In the *Tully* decision, the trial court erroneously allowed the introduction of lay testimony as to the necessity and costs of future hospital and medical expenses. The court held the judgment excessive by reason of the introduction of such testimony and ordered a remittitur.

The verdict in this case was general, and the error is in the charge and not the reception of evidence. We do not know, nor do we have any means of ascertaining, what sum, if any, the jury allowed as to future damages. No doubt exists that this court could order a remittitur if, in our view, the judgment was excessive, We are not prepared to so hold. Without the error, we would have affirmed.

Both parties were entitled to a jury verdict based upon proper instructions. The general rule, which we believe applicable here, is that where the amount of the remittitur is not clearly ascertainable and such amount can only be reached by speculation and by substituting the judgment of the court for that of the jury, entry of a remittiur is not proper. 5 American Jurisprudence 2d 366, Appeal and Error, Section 939, *et seq.*, 4 Ohio Jurisprudence 2d 358, Appellate Review, Section 1036.

In *Tuttle* v. *Furi,* 22 C. C. (N. S.) 388, the sixth paragraph of the syllabus provides:

"Where the court has erroneously permitted the jury to include certain items of damages in their verdict the error is not cured by a remittitur where there is nothing to show that the amount remitted was the amount which the jury may have awarded because of those items."

This court finding error having intervened to the prejudice of the appellee below, the judgment must be reversed and the cause remanded to the trial court.

*Judgment reversed.*

ABELE, P. J., and GRAY, J., concur.