DECISION.
The defendants-appellants, Errol G. Phipps and McGill Smith Punshon, Inc., appeal from a judgment of $172,238.20 rendered against them, and in favor of Tammy and William Waller, following a jury trial in the court below. On appeal, they present three assignments of error: (1) that the trial court erred by failing to grant them a mistrial, (2) that the trial court erred by permitting the Wallers to solicit an opinion from a lay witness, and (3) that the trial court erred by overruling their motion for a directed verdict and instructing the jury on future medical expenses when there was no expert testimony that such expenses were either likely or for any specific amount. For the reasons that follow, we do not find merit in either the first or the second assignment of error. But we agree that the Wallers failed to present sufficient evidence to authorize an award of future medical expenses, vacate that part of the judgment that the jury specifically allocated for this component of the Wallers' damage claims, and affirm the judgment as modified.
 I.
The negligence action against Phipps and his employer, McGill Smith Punshon, Inc., arose out of an automobile accident. Phipps was driving within the scope of his employment when he allegedly turned left in front of Tammy Waller, whose vehicle was coming in the opposite direction. Phipps testified that Tammy Waller's vehicle was hidden by a depression on the hilly road. Tammy Waller disputed this, testifying that, at the time Phipps turned in front of her, both vehicles were visible to each other. Tammy Waller's vehicle collided with the rear of Phipps's van.
In their first assignment of error, Phipps and Punshon argue that the trial court erred by not granting their motion for a mistrial after counsel for the Wallers disclosed in opening statement that Phipps had been cited by the police as a result of the accident. There was no further elaboration on this point. A defense objection to the disclosure was overruled, opening statements concluded, and court adjourned for the day. The next day, the defendants moved for a mistrial outside the hearing of the jury. The motion was overruled, but the trial court subsequently gave the following instruction to the jury: "During one of the counsel's statements, there was an objection which the Court overruled. On further review, I'm going to sustain that objection and urge you, if you remember that remark at all, to disregard that remark."
As this court has previously noted, "It is beyond dispute that, under current Ohio law, evidence of whether the alleged tortfeasor was arrested or issued a citation for the underlying traffic accident is inadmissible in a negligence action." Valleau v. Lynn (Mar. 6, 1998), Hamilton App. No. C-970340, unreported, citing Wolfe v. Baskin (1940), 137 Ohio St. 284,28 N.E.2d 629, paragraph two of the syllabus; Barge v. House (1952),94 Ohio App. 515, 110 N.E.2d 425; Larson v. Gibson (Jan. 5, 1995), Mahoning App. No., 93 CA 47, unreported.
In Valleau, we reversed the judgment because defense counsel disclosed to the jury, not once but twice, that his client had not been cited by the police as a result of the accident that gave rise to the litigation. The disclosure in that case was particularly egregious since an objection to the disclosure in opening statement had been sustained, and yet defense counsel again solicited the information from the defendant during trial. Further, defense counsel in opening statement had directly linked the absence of a citation to the lack of fault on behalf of the defendant. Under these circumstances, we determined that the prejudice deliberately inflicted upon the plaintiff's case by defense counsel was reversible error, notwithstanding the trial court's curative instructions.
Phipps and Punshon argue that this case should be treated the same asValleau. We disagree. There was only a single mention of the citation by plaintiffs' counsel during opening statement. The statement did not expressly link the issuance of a citation to the defendants' negligence. A curative instruction was given, as well as a subsequent instruction on the non-evidentiary nature of opening statement. Unlike defense counsel in Valleau, plaintiffs' counsel did not raise the subject again during the trial.
As we noted in Valleau, the admission of incompetent evidence is generally not reversible error per se. Whether the error is grounds for reversal in a particular case depends, rather, on whether the improper admission affected a party's substantial rights. Civ.R. 61; O'Brien v.Angley (1980), 63 Ohio St.2d 159, 407 N.E.2d 490; Petti v. Perna (1993),86 Ohio App.3d 508, 514, 621 N.E.2d 580, 583-584.
In the present case, there was substantial other evidence upon which the jury could have easily determined that Phipps had negligently turned in front of Tracy Waller, including evidence that he had apologized to Waller for pulling out in front of her. Given the significance of this other evidence, the limited nature of the disclosure, the giving of the curative instruction, and the presumption that juries do as instructed, we hold that the disclosure did not affect the parties' substantial rights. We emphasize, however, the strict nature of the rule with which we are here concerned. Evidence of whether a party was cited for the underlying traffic accident is not admissible in a negligence action — period. The introduction of such evidence, while not reversible error per se, puts in serious jeopardy the entire proceeding, and thus trial courts and attorneys should endeavor to ensure that no such evidence is referred to in opening statement or solicited during trial.
 II.
In their second assignment of error, Phipps and Punshon argue that the trial court erred by permitting the Wallers to elicit opinion testimony from Melvin Pistor, the person in whose driveway Phipps was turning when the accident occurred. Pistor's deposition testimony, which was read into evidence, included the following question and answer:
 Q. It is your opinion that had Mr. Phipps not turned into your driveway at the time he turned into the driveway the accident would not have occurred, is it not?
A. Correct.
 The Wallers argue, and we agree, that Pistor was not expressing an opinion in any expert legal sense. Rather, Pistor was merely stating the obvious: that had Phipps not turned when he did, there would have been no accident. As the Wallers point out, it was clear from his earlier testimony that he had not seen the accident as it occurred. Therefore, the import of this testimony was, as described by the Wallers, merely a statement of "admitted geometric fact." The Wallers also correctly point out that Phipps was asked an almost identical question with a similar response, drawing no objection from defense counsel.
We also reject the argument that the question misled the jury by appearing to solicit Pistor's opinion on fault. To accept this argument, we would have to conclude that the jury interpreted the question as something more than it was. There is nothing in the record to indicate that the jurors were in any way duped or particularly swayed by this testimony.
 III.
In their third assignment of error, Phipps and Punshon argue that the trial court erred by failing to grant their motion for a directed verdict on the Wallers' claim for future medical damages and by then proceeding to charge the jury on this issue. The basis of their argument is that the Wallers failed to present the necessary expert testimony to provide the jury with the information necessary to determine the nature of the future services and a reasonably certain estimate of their cost. We agree.
Initially we note that, after the Wallers presented their case, Phipps and Punshon made a general motion for a directed verdict "on each of the claims of the plaintiffs" without targeting specifically the issue of future medical expenses. But, at the close of the trial, Phipps and Punshon did object specifically to the trial court charging the jury on both permanent injury and future medical expenses. With regard to the latter, defense counsel argued that there was "not a scintilla of testimony" as to what type of future care Tammy Waller would require, and therefore the jury would be "absolutely speculating" on the costs of such care. Counsel for the Wallers, on the other hand, argued that the jury could simply infer from the permanency of her injuries that Tammy Waller would require more office visits with her treating physicians and then, based upon past invoices, arrive at some figure for future medical expenses.
The jury awarded the Wallers $50,000 in future medical expenses, together with $50,000 in future pain and suffering.
Upon review of the record, it is clear that there was sufficient evidence for the jury to conclude that Tammy Waller would suffer future disability and future pain and suffering. As a result of the accident, she suffered damage to her neck, causing continuing muscle spasms and a restriction of the range of motion. Although it was disputed by Phipps and Punshon, there was also evidence upon which the jury could have concluded that the accident also caused injury to Tammy Waller's lower back. She underwent surgery to repair a herniated disk that her orthopedic surgeon, Dr. George Griffin, attributed to the accident. Dr. Griffin testified that she would continue in the future to have some problems with back pain, as well as intermittent episodes of leg pain.
Significantly, however, none of the physicians were asked to outline a future course of treatment, to provide any details concerning the nature of the treatment, or to project any of the expected costs. Dr. Griffin testified that he had seen Waller on ten occasions after her surgery in February 2000. He testified that the last time he saw her, on July 10, 2000, she was still having some pain and that he continued her on medication and asked her to come back and see him in approximately two weeks. He testified that, at the time of his deposition on July 26, 2000, she had not been back to see him yet. Asked if he planned on seeing her again, Dr. Griffin replied, "When she shows up." He was not asked to predict how long or how often Tammy Waller would require office visits.
It is the rule in Ohio that "`the jury cannot be allowed to speculate or guess in making allowance for future medical expenses,'" and, to this end, there must be some "`data'" furnished to the jury upon which to predicate an estimate of future costs. Powell v. Montgomery (1971),27 Ohio App.2d 112, 120, 272, N.E.2d 906,912, quoting from Henderson v.Breesman (1954), 77 Ariz. 256, 259, 269 P.2d 1059, 1061. As observed inPowell,
 In 69 A.L.R.2d 1261, there is an extensive annotation upon the question of the requisite proof to permit future medical expenses as items of damage in personal injury actions. Under Section 3[b], Ohio is classified as a jurisdiction requiring expert medical testimony to allow recovery of future medical expenses. The Ohio case therein cited is Tully v. Mahoning Express Co., 161 Ohio St. 487, which holds that evidence as to the extent of further medical treatment, future hospitalization and estimated expense for such treatment can only be given by an expert witness.
 Id. at 118, 272 N.E.2d at 911.
Powell was applied more recently in Hammerschmidt v. Mignogna (1996),115 Ohio App.3d 276, 685 N.E.2d 281. In Hammerschmidt, the court affirmed the trial court's conclusion that the plaintiff was not entitled to jury instructions on the issue of future medical expenses even though, unlike the present case, there was at least some estimate of the cost of a future medical procedure. In holding the evidence insufficient to warrant a jury instruction, the court observed,
 Although the plaintiff's doctor estimated the cost of the surgery to be $10,932, this did not include expenses of the anesthesiologist or the hospitalization. Plaintiff was further required to set forth not only an amount for the proposed surgery but a specific time frame in which he intended to incur the alleged expense. Without these specifics, the jury would have to speculate as to whether the surgery would in fact occur, when it would occur, and, if it did, how much it would cost.
 Id. at 282, 685 N.E.2d at 285.
As noted, none of the physicians of record have expressed any opinion on the extent of Tammy Waller's future medical treatment. Compared toHammerschmidt, this case presents even less evidence of future medical expenses. Dr. Griffin was not asked how much longer he expected to see Tammy Waller on a regular basis. He did not indicate whether she would need any further surgeries, hospitalizations, physical therapy, or specific medical treatment. Similarly, no physician proffered an opinion on the cost of Tammy Waller's future medical treatment. The Wallers argue that, based upon Tammy Waller's life expectancy derived from a mortality table, the jury could simply have inferred the necessity of a certain number of medical office visits over the course of her life and multiplied that by the cost of previous visits to arrive at a figure of $50,000. We hold, however, that such a calculation would not be objectively based. "`[T]he jury cannot be left to guess the probable nature of future treatment or the probable expense thereof." Powell,supra, at 121, 272 N.E.2d at 912, quoting Breesman, supra, at 259,269 P.2d at 1061; Hammerschmidt, supra, at 281, 685 N.E.2d at 285. Without any expert testimony on the extent of Tammy Waller's future treatment, the jury's inference would have been nothing more than an uneducated guess.
We hold, therefore, that it was error for the trial court to have instructed the jury on the issue of future medical expenses given the absence of sufficient expert testimony to authorize such an award. The Wallers submit that a remittitur by this court of the future medical expenses awarded by the jury "would cure any damages error below." Without any expert testimony on the nature and extent of Tammy Waller's future medical treatment, however, it would be no less a guess by this court than it was for the jury to arrive at some figure representing her future medical expenses. Furthermore, when the evidence is legally insufficient to support an award, the proper course is to vacate it, not to reduce it by an arbitrarily selected amount.
Accordingly, the first and second assignments of error raised by Phipps and Punshon are overruled. The third assignment of error, however, is well taken, as we hold that it was error for the trial court to have submitted the question of future medical expenses to the jury due to the lack of sufficient evidence to authorize such an award. We therefore vacate that part of the judgment specifically allotted for future medical expenses, and modify the final judgment from a sum of $172,238.20 to $122, 238.20.
Gorman, P.J., Hildebrandt and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.