OPINION
Plaintiff-appellant/cross-appellee, Michele Jean Canterbury ("Canterbury"), appeals from a judgment of the Portage County Court of Common Pleas.
On January 12, 1995, two dogs, belonging to Raymond Skulina (Skulina), defendant-appellee/cross-appellant, entered Canterbury's yard and chased her cat up a tree. Canterbury saw what transpired, grabbed a baseball bat, and ran out of her house to protect her cat. Instead of fleeing from Canterbury, the dogs turned towards her. Scared, Canterbury turned to run, but slipped on the wet grass, injuring her right ankle. Appellant sustained a fracture to her right distal fibula, which required a surgical procedure to install a plate and screws.
Canterbury sued Skulina pursuant to R.C. 955.28, which provides that the owner of a dog is liable for any injury arising out of circumstances such as these. At trial, Canterbury's case consisted of: her testimony; her medical records from Robinson Memorial Hospital documenting her initial injury and subsequent surgery; the testimony of the dog warden; and, cross-examination of Skulina.
During cross-examination of Canterbury, defense counsel asked her about a prior knee injury, which was caused in a car accident in 1985. Canterbury required arthroscopic surgery on the knee. Among other questions, Canterbury was asked if she filed a lawsuit over that injury. Her counsel objected on the grounds of relevancy. The objection was overruled and Canterbury answered that she had filed a lawsuit. There were no further questions on that issue.
At the close of her case, Canterbury requested to admit a life expectancy table into evidence, which documented that she was expected to live another 39 years. The trial court denied Canterbury's request, concluding that in the absence of expert medical testimony, Canterbury could not submit the "permanent" injury aspect of her claim to the jury.[1] Canterbury then proffered evidence, preserving the issue for appeal.
At the close of Canterbury's case, Skulina moved for a directed verdict arguing that in the absence of expert testimony, a causal relationship was not established between the injury and the medical treatment nor had Canterbury established the injury itself. He argued that, as a layperson, Canterbury was not competent to establish the existence of a bone fracture and that expert testimony was required to prove a causal relationship between the alleged injury and the medical treatment rendered. Skulina's motion was overruled. The jury returned a verdict of $3,000 in favor of Canterbury. From this judgment, Canterbury timely filed her notice of appeal, assigning the following errors:
 "[1]. The trial court committed prejudicial error by not allowing introduction of plaintiff's life expectancy tables when plaintiff's injury was as [sic] of an objective nature that the jury could have drawn their own conclusions as to plaintiff's permanent injury.
 "[2]. The trial court committed prejudicial error by allowing defendant upon cross examination and over plaintiff's counsel's objection testimony that plaintiff had filed a prior lawsuit over an injury to another area of her body not injured in the case sub judice."
 On cross appeal, Skulina has assigned the following error:
 "[1.] The trial court committed prejudicial error by overruling defendant's motion for a directed verdict after plaintiff failed to produce expert medical testimony in support of her personal injury claims."
 In Canterbury's first assignment of error, she argues that the trial court erred in excluding the life expectancy table from evidence. In effect, Canterbury contends that the trial court denied her the opportunity to seek an award for permanent damages. Canterbury did not present any expert medical testimony regarding the permanency of her injury; she argues that her injury was objective in character.
In Day v. Gulley (1963), 175 Ohio St. 83, 86, the Supreme Court of Ohio determined that if the injury is subjective in character, there must be expert evidence as to future pain and/or suffering, permanency of injuries, or lasting impairment of health. In contrast, if the injury is objective in character, such as the loss of an arm, or leg, the jury may draw their conclusions as to future pain and suffering from that fact alone, the permanency of such injury being obvious. Id. "[A]n injury is `objective' when, without more, it will provide an evidentiary basis for a jury to conclude with reasonable certainty that future damages, such as medical expenses will probably result." Powell v. Montgomery (1971),27 Ohio App.2d 112, 119.
Thus, our initial inquiry is whether Canterbury's condition after the incident was objective or subjective. We conclude that the immediate injury, a fracture to the right distal fibula, was subjective in character, however, the permanency of this injury — which required a surgical procedure to install a plate and screws, was objective in character. Unlike a fracture that heals after a closed reduction, a fracture that requires an open reduction and the installation of a plate and screws provides evidence of permanency. The plate and screws provide an evidentiary basis for this court, and a jury, to conclude with reasonable certainty that future damages, such as medical expenses will probably result. Thus, we conclude that Canterbury's injury was an "objective injury" as contemplated in Day. The trial court erred in failing to admit the actuarial table into evidence. Canterbury's first assignment of error has merit.
In Canterbury's second assignment of error, she argues that the trial court erred by failing to sustain her objection to a question posed to her by Skulina's counsel during cross-examination. Canterbury was asked a series of questions regarding a knee injury she sustained ten years prior to this incident. An objection was not made until Canterbury was asked: "As a result of that injury, you filed a lawsuit as a result of that, didn't you?" She answered "yes" before counsel was able to object. Counsel then objected on the grounds that the prior knee injury was irrelevant. The objection was overruled. On appeal, Canterbury again asserts that her previous knee injury was irrelevant and that the introduction of the fact she had filed a prior lawsuit was prejudicial to her cause, because it painted her as a litigious person.
A "trial court is vested with broad discretion in determining the admissibility of evidence, so long as the court's discretion is exercised in line with the rules of procedure and evidence." Sabruno v. Furey
(Aug. 19, 1994), Lake App. No. 93-L-079, unreported, 1994 Ohio App. LEXIS 3650, at *10; citing Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. Upon review of the trial court's exercise of discretion, this court must limit its review to whether the lower court abused it discretion. Id.Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
With respect to the prior injury to the knee itself, that clearly was relevant evidence, because Canterbury was claiming she sustained a permanent injury to her leg; i.e. she had difficulty using the leg normally. The existence of a prior serious injury to the same leg might well have some impact on the normal functioning of the leg and, therefore, was a fact that could properly be considered by the jury. However, the fact that she filed a lawsuit to obtain compensation for the injury is prejudicial and had no relevance to the health of the leg.
While the objection was proper and should have been sustained, the trial court's error in failing to sustain the objection was not such that it warrants a reversal. "In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal."Smith v. Flesher (1967), 12 Ohio St.2d 107, paragraph one of the syllabus; see, also, Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 185. The introduction of Canterbury's prior lawsuit, while prejudicial to her cause, was harmless error at best. Canterbury's testimony established that she sustained a serious knee injury in a car accident and that, as the victim of another's tortious driving, she sued. Certainly, the fact that Canterbury previously had filed a lawsuit is not relevant to the instant matter and should not have been permitted into evidence. However, Canterbury was not legally prejudiced by its admission. Canterbury's second assignment of error is without merit.
In Skulina's assignment of error on cross-appeal, he argues that the trial court erred by failing to direct a verdict in his favor. Specifically, Skulina argues that, because Canterbury failed to present any expert medical testimony establishing the causal relationship between his alleged negligence and her injuries, the claim must fail. Skulina's assignment fails on procedural grounds. While Skulina moved for a directed verdict at the close of Canterbury's case, the record does not indicate that he renewed the motion at the close of his case. "[W]hen a defendant makes a motion for a directed verdict at the conclusion of the plaintiff's case and it is overruled, the defendant must renew his motion for a directed verdict at the conclusion of all the evidence in order to preserve the issue for appeal." Burk v. Enzo's of Elm Rd., Inc. (Nov. 17, 2000), Trumbull App. No. 99-T-0003, unreported, 2000 Ohio App. LEXIS 5373, at *5-6; citing Helmick v. Republic-Franklin Ins. Co. (1988),39 Ohio St.3d 71, paragraph one of syllabus. Thus, it appears Skulina has waived the issue, however, were we to consider the issue on its merits, the assignment would still lack merit.
In Darroch v. Smythe Cramer Co., (Apr. 3, 1998), Lake App. No. 96-L-212, unreported, 1998 Ohio App. LEXIS 1450, at *7-8, this court stated:
 "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526; Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405, 408. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus; ***."
 In support of his argument that Canterbury was required to present expert medical testimony on her injury in order for a jury to consider the issue, Skulina cites Darnell v. Eastman (1970), 23 Ohio St.2d 13, syllabus, wherein the Ohio Supreme Court stated:
 "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury."
 The question presented is whether this rule applies, or whether the facts of this case present the exception delineated, which is, whether the cause and effect of the injury was so apparent as to be a matter of common knowledge. In Davis v. Morton Thiokol, Inc. (Nov. 1, 1991), Lake App. No. 90-L-15-083, unreported, 1991 Ohio App. LEXIS 5270, at *5, we noted "[i]t is not always necessary to produce medical testimony to establish proximate cause between the injury and the harm claimed. In certain cases, the testimony of lay witnesses can be sufficient to prove a causal relationship." See Stacey v. Carnegie-Illinois Steel Corp. (1951), 156 Ohio St. 205. The counterpoint of law to Darnell was set forth in White Motor Corp. v. Moore (1976), 48 Ohio St.2d 156, at paragraph two of the syllabus, wherein the court stated:
 "Where the issue of causal connection between an injury and the specific subsequent physical disability involves questions which are matters of common knowledge, medical testimony is not necessary in order to submit the case to the jury."
 In Davis, this court determined that the relevant distinction regarding the character of the injury is whether the injury is readily observable or understandable, or an injury, which is "internal and elusive in nature, unaccompanied by any observable external evidence." Id. at *6. The rationale behind this distinction was explained in Gibbs v. General Motors Corp. (Mar. 27, 1987), Trumbull App. No. 3625, unreported, 1987 Ohio App. LEXIS 6288, at *4, wherein we stated:
 "It is when the internal complexities of the body are at issue, that we generally initiate the metamorphosis in the evidential progression where medical testimony moves from the pale of common knowledge matters and within layman competency where expert testimony is not required, to those areas where such testimony is more appropriate and indeed most necessary for the trier of fact to understand the nature and cause of the injuries alleged."
 In this case, Canterbury testified that she ran out of her house to scare off dogs that were threatening her cat, slipped on the wet grass, and fractured her right ankle. She also testified to her symptoms and observations of the injury, and submitted the relevant medical records. The trial court determined that she provided sufficient credible evidence on the cause of the injury to submit the matter to the jury. Likewise, the court concluded that a broken ankle was a sufficiently understandable, observable, and comprehensible injury, within the scope of common knowledge, and that an expert witness was not required. We agree with the trial court's conclusions. Skulina's assignment of error is without merit.
Based on the forgoing, the judgment of the Portage County Court of Common Pleas is reversed and this case remanded for proceedings consistent with this opinion.
PRESIDING JUDGE WILLIAM M. O'NEILL, NADER, J., concurs, GRENDELL, J., dissents.
[1] While the record does not contain the court's charge to the jury, it appears that the issue of future damages was not submitted to the jury.