**UHLMANSIEK, Appellant,**

v.

**SALVATION ARMY et al., Appellees.**

[Cite as *Uhlmansiek v. Salvation Army,* 159 Ohio App.3d 623, 2005-Ohio-652.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030819.

Decided Feb. 18, 2005.

</div>

624

Bruce B. McIntosh, for appellant.

Jay R. Langenbahn, for appellees.

GORMAN, Judge.

{¶ 1} The plaintiff-appellant, Jay D. Uhlmansiek, appeals from the order of the trial court denying his motion for a new trial on his personal-injury claim against the defendants-appellees, the Salvation Army and Robert S. Jones. A jury had returned a general verdict of $6,829.64 in Uhlmansiek's favor. The trial court then granted a motion by the Salvation Army and Jones "to Remit and/or Reduce Judgment" by a stipulated amount representing monies advanced by the Salvation Army to assist Uhlmansiek in the payment of medical bills prior to trial. Having objected to the reduction, Uhlmansiek filed a motion for a new trial, arguing that the resulting award was inadequate and given under the influence of prejudice, that the judgment was not sustained by the weight of the evidence, and that the court erred by admitting certain medical evidence. The trial court overruled the motion.

{¶ 2} In his three assignments of error, Uhlmansiek now asserts that the trial court erred by (1) reducing the judgment by the sum of $7,319, (2) failing to grant his motion for a new trial, and (3) failing to grant his motion to strike certain medical evidence. For the following reasons, we agree with Uhlmansiek's second assignment of error and thus reverse.

I

{¶ 3} Since our resolution of the assignments of error is based largely upon procedural matters, we forgo a lengthy recitation of the facts underlying Uhlmansiek's claim against the Salvation Army and Jones. Suffice it to say, Uhlmansiek allegedly suffered injury to his right biceps tendon (which had previously been surgically reattached) after Jones, a Salvation Army employee, drove one of the charity's trucks into his car. The parties do not disagree, and, in fact, stipulated prior to trial, that the Salvation Army, recognizing its potential liability, paid certain medical bills on behalf of Uhlmansiek. The amount of the medical bills paid by the Salvation Army, as stipulated by the parties, was $7,493.64.

{¶ 4} At trial there was conflicting expert testimony about whether the accident either had caused Uhlmansiek a new injury or had aggravated his preexisting injury. The jury returned a general verdict of $6,829.64, in other words, less than the total amount of the medical bills paid by the Salvation Army. The Salvation Army and Jones then filed a motion "to remit and/or reduce judgment" by the amount of medical bills ($7,493.64) that the parties had stipulated had been paid by the Salvation Army.

{¶ 5} Uhlmansiek objected to the motion. His first ground for objection, apparently inspired by the Salvation's Army status as a charitable institution, was that the organization had made the payments strictly as a volunteer. His second ground, however, was considerably more compelling: that it was "impossible to determine from the general verdict whether or not the monies awarded by the jury were for medical care and treatment for which [the Salvation Army] made any payment." He argued further that if the court were to somehow assume that the entire $6,829.64 had been awarded for economic damages, it was also required to conclude that the jury had awarded him nothing for his pain and suffering, which would have made the award legally inadequate.

{¶ 6} Notwithstanding Uhlmansiek's objections, the trial court, by entry dated September 27, 2002, granted the Salvation Army's and Jones's motion. Specifically, the court ordered that the award of $6,829.64 be "reduced by the amount of $7,319.00, being the total amount of the medical bills paid by the defendants on behalf of the Plaintiff."

{¶ 7} Uhlmansiek subsequently filed his motion for a new trial. The grounds for the motion were (1) that the trial court's reduction of the award resulted in a verdict that was inadequate and the product of prejudice, (2) that the verdict was not sustained by the weight of the evidence, and (3) that the court had committed errors in the admission of certain medical evidence.

{¶ 8} The Salvation Army and Jones responded that the damage award was supportable. They argued that the sum of $6,829.64 showed simply that the jury had placed some, but not all, of the liability on them. Although they conceded that, because of the general nature of the verdict, it was purely a matter of speculation "how the final amount was reached," they nonetheless maintained that the verdict was neither inadequate nor contrary to the evidence. They further argued that the court had not committed any errors in the admission of evidence.

{¶ 9} By entry dated October 7, 2003, the trial court overruled the motion for a new trial. Although the court recognized that it "could only speculate as to how the jury would apportion the damages among medical bills, lost wages, and pain and suffering," it nonetheless concluded that "there was still sufficient credible evidence which the jury could have considered [in] reach[ing] the verdict it did."

The court also rejected Uhlmansiek's contention that it had erroneously admitted certain medical evidence.

## II

{¶ 10} In his first assignment of error, Uhlmansiek argues that the trial court erred by ordering that the verdict of $6,829.64 be reduced by the amount of $7,319. He contends that the reduction was in error because (1) the medical bills underlying the reduction were voluntarily paid by the Salvation Army without a legally enforceable understanding that it would be repaid and (2) the reduction could not have been made in the absence of a counterclaim by the Salvation Army to recover the money.

{¶ 11} Uhlmansiek has not appealed the order of the trial court reducing the award. Rather, he has appealed the order of the trial court overruling his motion for a new trial, in which he did not directly challenge the reduction but argued that the postreduction award (a negative sum) was inadequate. Neither of his arguments under the first assignment of error was raised in his motion for a new trial. In any case, neither argument would have been successful even if preserved. The argument that the payment by the Salvation Army for his medical bills prior to trial was charitable in nature strikes us as a flight of fancy. The Salvation Army and Jones are correct that the cases cited by Uhlmansiek for this proposition are inapposite, being concerned with subrogation and the principle that subrogation is allowed only in favor of one who has been obliged to pay the debt of another, and not in favor of one who pays the debt voluntarily. See *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn.* (1993), 66 Ohio St.3d 209, 213–214, 611 N.E.2d 313. This a case does not involve subrogation. And factually there is no basis for overturning the trial court's decision not to treat the payments as a charitable act.

{¶ 12} As for Uhlmansiek's second argument under his first assignment of error, the case he cites for the proposition that the money paid by the Salvation Army could be recouped only by a counterclaim, *Duskin v. Allstate Ins. Co.,* 1st Dist. No. C–010626, 2002-Ohio-2348, 2002 WL 1009665, is inapposite, since that case involved money advanced under the medical-payment coverage of an insurance policy.

{¶ 13} We turn, then, to Uhlmansiek's second assignment of error, which we conclude has merit. In his second assignment of error, Uhlmansiek challenges the trial court's refusal to grant his motion for a new trial. He argues that by ordering the postverdict reduction, the court improperly treated the entire $6,829.64 as economic damages, the consequence of which was that he was

left with zero damages for his pain and suffering. The result, he contends, was a legally inadequate verdict necessitating a new trial.

{¶ 14} We agree that the trial court should have ordered a new trial. After admitting that it could only speculate how the jury had apportioned damages, the trial court nonetheless treated the entire award as economic damages subject to reduction by the stipulated amount. Even if we were to overlook this inconsistency, the Civil Rules simply do not provide for the unilateral reduction ordered by the trial court. When we asked counsel for the parties during oral argument whether they were aware of any precedent for a trial court's reducing a damage award outside of the procedure for remittitur, they agreed that they were not.

{¶ 15} Counsel for the Salvation Army and Jones argues, however, that the reduction ordered by the trial court was properly the result of the stipulation entered into by the parties prior to trial. But this argument overstates the nature of the stipulation. The discussion leading to the stipulation was transcribed and is part of the record before us. As we interpret what counsel said, the parties agreed only to the amount of the medical bills, nothing more. Indeed, counsel for Uhlmansiek stated that he would provide his position on the Salvation Army's entitlement to a credit *after* the trial. Counsel for the Salvation Army and Jones appeared to accept this arrangement, stating, "I understand what you're saying is maybe the jury comes back and says we award $5,000 to plaintiff, then you're going to dispute whether it should go to that." This is exactly what happened.

{¶ 16} "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, citing *Toledo, Columbus & Ohio River RR. Co. v. Miller* (1923), 108 Ohio St. 388, 402–403, 140 N.E. 617. When the court deems the award excessive, the proper course is to offer the plaintiff a remittitur and, if the remittitur is refused, to set aside the verdict and grant a new trial. Furthermore, when the amount of the excess is not readily ascertainable and can be reached only by speculation, in other words by substituting the judgment of the court for that of the jury, even a remittitur is not proper. See *Powell v. Montgomery* (1971), 27 Ohio App.2d 112, 124, 56 O.O.2d 279, 272 N.E.2d 906.

{¶ 17} In sum, in a case for unliquidated damages, the only way in Ohio for a trial court to reduce the damage award of the jury is either (1) to get the plaintiff to agree to a remittitur or (2) to set aside the verdict and order a new trial. Since Uhlmansiek never agreed to the reduction, Uhlmansiek was entitled to a new trial automatically once the trial court unilaterally invaded the province of

the jury and reduced its award. Since his motion for a new trial asked only for that to which he was entitled, the trial court erred in denying it.

{¶ 18} Accordingly, Uhlmansiek's second assignment of error has merit. Given the necessity of a new trial, the third assignment of error is moot. The judgment of the trial court is reversed, and this case is remanded to the trial court for further proceedings.

Judgment reversed
and cause remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.